### 7385

### McKITTRICK v. GREENVILLE TRACTION CO.

Release for Personal Injury.—If one receiving an injury execute a release in such a mental condition as not to know or remember its execution or of the reception of any consideration therefor, the release does not estop him from suing for damages for the injury, but in case of recovery the amount paid for the release should be deducted from the judgment.

Before DeVore, J., Greenville, November, 1908. Reversed.

Action by Ada McKittrick against Greenville Traction Co. From order of nonsuit, plaintiff appeals.

*Mr. J. J. McSwain,* for appellant, cites: 38 S. C., 199; 24 Ency., 623; 127 Mass., 86; 25 L. R. A., 514; 158 U. S., 326.

*Messrs. Cothran, Dean & Cothran,* contra, cite: 56 S. C., 508; 61 S. C., 455; 63 S. C., 297; 65 S. C., 77; 77 S. C., 71.

November 25, 1909. The opinion of the Court was delivered by

Mr. Justice Woods. This action, commenced about 10th December, 1906, is for recovery of damages for injuries received by plaintiff while she was descending the steps in getting off a street car. The answer set up a general denial, contributory negligence, and the following release:

"Greenville, S. C., December 2, 1906.

"I have this day stepped from a car of Greenville Traction Co., at the corner of North and Main Streets, thinking I was at the postoffice, and for the present medical service rendered hereby release the Greenville Traction Co. from all claims for damages, for personal injuries or otherwise, arising from this fall.

(Signed)        ADA McKITTRICK.
Witness:   H. R. FOTHERGILL."

The plaintiff served a reply, alleging that she had no recollection of signing the release, that if she signed it, she did so a few minutes after her injury, and while she was in a dazed and semi-conscious condition, and when she did not know what it was; "that if she signed any paper it was obtained by defendant's fraud and imposition, and that nothing was paid on her account thereof, and plaintiff prays that the said written statement, if any exists, be set aside and be declared to be null, void and of no effect." It is further alleged in the reply that the plaintiff did not know until 23d March, 1908, long after she had commenced her action, that defendant had paid Dr. Earle for medical services of the value of one dollar rendered to her, and that she immediately tendered the sum of one dollar to the defendant's attorney, and on the following day made the tender in writing. The last paragraph and the prayer of the reply is as follows:

"The plaintiff alleges that said tender of one dollar was made at the earliest moment when plaintiff discovered that defendant had paid for the services rendered by Dr. C. B. Earle. Plaintiff further alleges that she never saw until said March 23, 1908, the alleged release, and has not now,

and never had any recollection of signing the same, or of hearing its contents read, and no proposition was made to her by any person that medical services would be rendered to her, if she would consent to release her claim for injuries. Plaintiff further alleges that she assumed that said medical services were rendered to her by Dr. C. B. Earle on her own account, or as a mere gratuity, to a female person who had been suddenly and unexpectedly injured.

"Wherefore plaintiff prays that said release be set aside and declared to be entirely null and void."

The plaintiff was asked by her counsel, "Do you know anything about signing this release? answered, No, sir; I don't know anything about it."

On cross-examination, she testified further, as follows: "Q. What did the doctor do to you at the office? A. He washed the mud off me the best he could. Q. What else— did he say anything to you? A. He told me to go home, and if I needed him to send after him, that he was the doctor to treat all who got hurt on the cars. Q. He told you he did not think you would need him? A. He told me if I needed him to let him know. Q. Did you sit down in a chair in his office? A. Yes, sir. Q. Where did you sit? A. On the place where they laid me out to examine me. Q. He laid you on a place there to see if you were injured? A. Yes, sir. Q. Did he give you any medicine at all? A. Not that I remember of. Q. You remember his taking you in there and washing your face, do you? A. Yes, sir. Q. And you remember his telling you all of that, that he was the railroad's doctor, and that he treated all cases where anyone was hurt on the cars, and if you need him to let him know? A. Yes, sir. Q. You remember all that the doctor said and did, and yet you don't remember signing any paper? A. No, sir; I don't remember anything about a paper."

The Circuit Court ordered a nonsuit on the authority of *Levister* v. *R. R. Co.*, 56 S. C., 508, 35 S. E., 207, because

the plaintiff had not tendered back to the defendant the amount paid for the medical services, mentioned as the consideration of the release. The rule in this State is, that an action for damages cannot be maintained in the face of a release given for a valuable consideration, although the release be obtained by fraud, until the consideration of the release has been paid or tendered back. *Levister* v. *R. R. Co., supra; Riggs* v. *Association,* 61 S. C., 488, 39 S. E., 614. *Treadway* v. *Union-Buffalo Mills,* recently filed. But we think this case falls without the rule, because it is not covered by the principle on which the rule rests, which is thus clearly stated in the Levister case by Chief Justice McIver: "If, in such a case, the plaintiff conceives that the release, the execution of which he admits, was obtained by fraud, and for that reason seeks to avoid it, his first step is to return the money he received in consideration of executing the release; for he cannot be permitted to retain the benefits which he has received under a contract and, at the same time, escape the obligations which such contract imposed upon him." The rule then depends upon the principle of estoppel. For estoppel of this kind to be available to a party setting up a release, it seems obvious, that it must appear that the party who executed it, either actually knew or should have known that the release had been executed and a consideration had been paid or bestowed and had not been restored. It requires no authority to show that estoppel by conduct cannot arise when the person against whom it is alleged, by reason of mental deficiency, either temporary or permanent, could not be charged with notice, actual or constructive, of the doing of the act alleged to constitute estoppel. It is true that every one is presumed to know what papers he signs and what consideration he receives; but this presumption may be rebutted by evidence. The evidence here tended to rebut the presumption, for the plaintiff testified that when she signed the release she was in such condition of mind from the accident that she did not know that

she had signed it; and there was nothing to indicate that she had acquired knowledge of the release before she brought her action. The mere fact that the plaintiff was carried to the office of the surgeon of the defendant, and attention given to her, did not put her on notice that such service was rendered as the consideration of a release.

If the jury should conclude that the plaintiff was in such mental condition that she did not know until after she had commenced her action that she had signed the release or received any consideration for a release, then the fact that she had actually signed and actually received the consideration and did not tender it back would not affect her right of action. In that condition of the matter the defendant would be entitled to the relief of having the value of consideration paid for the release deducted from the damages, if any, which the plaintiff may be entitled to recover.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the cause remanded to that Court for a new trial.