Marie **RACHESKY**, Appellee,

v.

Gary Ithemar **FINKLEA**, Appellant.

No. 9162.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 19, 1963.

Decided March 13, 1964.

W. Laurier O'Farrell, Florence, S. C., for appellant.

D. Kenneth Baker, Darlington, S. C. (James P. Mozingo, III, Darlington, S. C., on brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and FIELD, District Judge.

FIELD, District Judge:

This diversity action was filed in the District Court on May 2, 1962, to recover damages for injuries sustained in an automobile accident which occurred on January 26, 1961. The defendant filed his answer on May 12, 1962, and in addition to a general denial, alleged by way of affirmative defense that the plaintiff, Rachesky, for value received had executed a written release of all claims resulting from the subject accident. On July 26, 1962, plaintiff served interrogatories on the defendant seeking, among other things, information relative to the release to which the affirmative defense referred. To each of ten interrogatories on this subject the defendant's answer was "Not known." [1]

---

[1] The interrogatories propounded were as follows:

"Interrogatory No. 3

"(a) At what time subsequent to the accident described in the Complaint did plaintiff Marie Rachesky allegedly execute a written release?

"(b) For what valuable consideration was the alleged release executed? If the consideration was money, what amount?

"(c) In what city, state, and in what building was the alleged written release executed?

"(d) By what person or firm was the alleged written release drafted, typed or printed?

"(e) What person or persons, if any, witnessed the execution of the alleged written release?

"(f) What person, persons, firms or corporations, and their specific names, were allegedly released by the instruments referred to in your Answer?

"(g) What representative of the defendant procured the execution of the alleged written release, and what is his address and occupation?

"(h) What period of time had elapsed between the time of the accident in question and the time of the execution of the alleged written release?

"Interrogatory No. 4(b)

"(b) Was the person who procured or obtained the execution of the alleged written release a representative, agent, or employee of the insurance carrier of the defendant Gary Ithemar Finklea?

"Interrogatory No. 6

"Was the plaintiff Marie Rachesky given a copy of the alleged written release?"

The record on appeal does not contain either the answers to plaintiff's interrogatories or Goodwyn's deposition; however, both parties acknowledged these documents in their briefs and argument before this Court.

On October 18, 1962, plaintiff filed a motion for discovery and production of the alleged release and other documents, and an agreed order granting the motion was entered on November 3, 1962. It does not appear on the record that any papers were produced pursuant to that order and no reference was made to it in either the briefs or argument. On November 30, 1962, plaintiff took the discovery deposition of A. R. Goodwyn, Jr., the insurance adjuster who handled this matter. On February 7, 1963, defendant's counsel filed notice of a motion to require plaintiff to reply to the affirmative defense and state whether the consideration for the release had been returned or tendered to the defendant. Plaintiff filed her reply on February 11, 1963, denying that she had executed a release to the defendant or anyone acting for him, and stating that under the circumstances she was under no obligation to make any tender.

This action came on for trial on May 1, 1963, and the plaintiff presented evidence with respect to the accident and her injuries. At the suggestion of the Court, the plaintiff offered no testimony on her case in chief in regard to the alleged release. At the close of plaintiff's evidence the defendant elected to rely solely upon the affirmative defense and presented the adjuster, Goodwyn, as the only defense witness. Goodwyn testified concerning the circumstances under which the release had been taken and introduced as exhibits the release, his personal check to the order of the plaintiff in the amount of $25.00 and a writing signed by the plaintiff assigning to Goodwyn "the proceeds of any settlement" with the defendant's insurance carrier.

After the defendant rested, the plaintiff was recalled and gave her version of the circumstances attendant to the execution of the release. At the conclusion of the plaintiff's testimony on this subject, her counsel moved to amend the pleadings to allege that the release was obtained by fraud, and thereupon tendered the $25.00 consideration to de-

fendant's counsel. This tender was declined on the ground that it was not timely, and defendant also challenged the right of plaintiff to amend her pleadings at that stage of the proceeding. The Court, however, granted the motion to amend and permitted the plaintiff to publish to the jury the interrogatories and answers relative to the release. The Court denied defendant's motion for a directed verdict and submitted the case, including the question of fraud and the validity of the release, to the jury which returned a verdict in favor of the plaintiff in the amount of $10,100.00. Defendant's motions for judgment notwithstanding the verdict or in the alternative for a new trial were denied, and this appeal followed.

At the trial the evidence was to the effect that on January 26, 1961, plaintiff was a passenger in a car driven by Mrs. Edna Golan which was involved in a collision with the defendant's automobile in the city of Florence, South Carolina. Following the accident plaintiff was taken to the McLeod Infirmary where she was treated but not admitted. She accompanied Mrs. Golan to the police station and then returned to their motel. A. R. Goodwyn, Jr., operates an independent adjustment firm and on the afternoon of the accident a representative of his firm called on the plaintiff and Mrs. Golan for the purpose of investigating the accident. This investigation was being conducted on behalf of Allstate Insurance Company, the insurance carrier on the Golan automobile. It was necessary for the ladies to remain in Florence overnight while their vehicle was being repaired. On the following morning Goodwyn's firm was employed by Central Surety & Insurance Corporation, the insurance carrier on the defendant's automobile, to investigate the same accident. Apparently the investigation on behalf of Allstate had convinced Goodwyn that the defendant was liable for the accident and he made no further investigation, but contacted the plaintiff and Mrs. Golan for the purpose of adjusting any claims.

At this point there is considerable conflict in the evidence. Goodwyn testified that he met with Mrs. Golan and the plaintiff at his office and explained to them that he was representing Central Surety and not Allstate. With that understanding and in an attempt to get the ladies started on their journey north with as little delay as possible, he discussed the settlement and release of their respective claims. He testified that the plaintiff agreed to release her claim and signed the release for the consideration of $25.00. He drew his personal check to the order of the plaintiff in that amount which the plaintiff endorsed. Goodwyn's wife took the check to a bank and obtained $25.00 in cash which was paid to the plaintiff and for which she executed the assignment to Goodwyn of the proceeds of any settlement with Central for damages resulting from the accident.

On the other hand, the plaintiff testified that she was not a party to the negotiations in Goodwyn's office but went there only as a companion to Mrs. Golan. She stated that Goodwyn never explained to her what parties he represented and that she received the $25.00 with the understanding that it was for the expense and inconvenience of remaining overnight in Florence. She further testified that there was no writing on the release form when she signed it and that at the time she was in Goodwyn's office she was quite nervous and upset because of the accident. She stated that when she left the McLeod Infirmary she was advised that the charges would be taken care of, and shortly thereafter she received in the mail a receipt from the Infirmary showing that the outpatient charges on her account had been paid by Allstate Insurance Company.

Defendant takes the position that the District Judge erred in considering the tender and amendment as a procedural matter under the Federal Rules instead of a substantive question which would be controlled by South Carolina law. In our opinion this question is academic in the light of the South Carolina law on this subject.

Under the decisions of South Carolina the general rule is that a party who seeks to avoid a release on the ground that it was obtained by fraud or false representation must first return or tender back any consideration received by him for the release. Taylor v. Palmetto State Life Ins. Co., 196 S.C. 195, 12 S.E.2d 708 (1940); King v. Pilot Life Ins. Co., 181 S.C. 238, 187 S.E. 369 (1936). These cases followed the decision in Levister v. Southern Ry. Co., 56 S.C. 508, 35 S.E. 207, at 209 (1900), wherein the Court stated:

> "* * * If, in such a case, the plaintiff conceives that the release, the execution of which he admits, was obtained by fraud, and for that reason seeks to avoid it, his first step is to return the money he received in consideration of executing the release; for he cannot be permitted to retain the benefits which he has received under a contract, and at the same time escape the obligations which such contract imposed upon him."

This general rule, however, is not inflexible and whether the rule applies in a given case depends on the facts of such case. It is based upon the principle of estoppel and in those cases in which it has been applied it appears that the disavowing party failed to tender back the consideration despite the fact that he had acknowledged the existence of the release in his pleadings or otherwise. Taylor v. Palmetto State Life Ins. Co., supra; King v. Pilot Life Ins. Co., supra; Harrison v. Southern Ry. Co., 131 S.C. 12, 127 S.E. 270 (1925). In any event, tender is not required until the plaintiff has knowledge that such a release exists. Harrison v. Southern Ry. Co., supra; McKittrick v. Greenville Traction Co., 84 S.C. 275, 66 S.E. 289 (1909). In the latter case the Court, after adverting to the Levister opinion, stated (66 S.E. at 290):

> "* * * The rule then depends upon the principle of estoppel; for

estoppel of this kind to be available to a party setting up a release it seems obvious that it must appear that the party who executed it either actually knew, or should have known, that the release had been executed, and a consideration had been paid or bestowed and had not been restored. It requires no authority to show that estoppel by conduct cannot arise when the person against whom it is alleged, by reason of mental deficiency, either temporary or permanent, could not be charged with notice, actual or constructive, of the doing of the act alleged to constitute estoppel. It is true that every one is presumed to know what papers he signs and what consideration he receives; but this presumption may be rebutted by evidence. The evidence here tended to rebut the presumption, for the plaintiff testified that when she signed the release she was in such condition of mind from the accident that she did not know that she had signed it; and there was nothing to indicate that she had acquired knowledge of the release before she brought her action."

■ In the present case, the plaintiff did not acknowledge the existence of the release but on the contrary denied that she had ever executed such an instrument. In the light of the evidence we are of the opinion that this denial could properly be treated as bona fide until the development of the evidence at the trial. The fact that Goodwyn represented two insurance companies at the time the release was executed and that the principal negotiations were between Goodwyn and Mrs. Golan when considered along with the physical and mental condition of the plaintiff offer a plausible explanation in support of the plaintiff's denial of the existence of the release. The Infirmary receipt indicating that the hospital charges had been paid by Allstate could well have indicated to the plaintiff that the payments came from Mrs. Golan's insurance carrier rather than the insurer of the defendant's automobile.

Defendant contends, however, that plaintiff's counsel was apprised of the facts at the time Goodwyn's deposition was taken some months before the trial and that a tender should have been made at that time. It is true that this deposition might have furnished some information relative to the release. However, any disclosure at that time was colored, if not obscured, by the failure of the defendant to properly respond to the plaintiff's interrogatories with details of the release. Counsel for defendant argued that the defendant, himself, had no knowledge upon which to answer the interrogatories, but the information was within the knowledge of his attorneys and under the circumstances should have been disclosed by the discovery procedure. See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

In the light of the evidence and other circumstances here present, we conclude that the tender was timely made after plaintiff and her counsel had definitive information in regard to the release, and the District Court acted properly in permitting the plaintiff to amend her pleadings and submitting the questions of fraud and the validity of the release to the jury. Thompson v. Bass, 167 S.C. 345, 166 S.E. 346 (1932); McKittrick v. Greenville Traction Co., supra.

■ Defendant also contends that the verdict was excessive and that the District Court erred in refusing to award a new trial. It is well settled that the granting of such motion rests in the sound discretion of the trial judge and unless an abuse of discretion can be shown this feature of the case is not reviewable on appeal. Rayfield v. Lawrence, 253 F.2d 209 (4th Cir.1958). Upon our review of the record we cannot say that the verdict was excessive, and therefore there was no abuse of discretion in refusing to grant the new trial.

For the reasons stated, the judgment of the District Court is affirmed.

Affirmed.