Argued April 20; reversed May 10; rehearing denied July 12, 1932

GLICKMAN *v.* WESTON

(11 P. (2d) 281, 12 P. (2d) 1005)

*S. J. Bischoff,* of Portland, for appellant.

*Barnett H. Goldstein* and *Samuel B. Weinstein,* both of Portland, for respondent.

CAMPBELL, J. This is an action brought to recover damages for alleged slander. The complaint alleges plaintiff was a retail merchant for the past twenty-five years in the city of Portland, during all of which time he had enjoyed a good reputation and a profitable business. "That during the months of September, October and November, 1930, the defendant maliciously and wrongfully and with the intent to cause the same to be believed, spoke of and published and circulated concerning the plaintiff, the following: 'That he is absolutely broke; that he will not pay his just bills; that he is not worthy of any credit whatever; that he is not worthy of trust; that he is dishonest in his business dealings.' " He alleged that the statements so made were false and were published with the intent to injure the reputation of plaintiff in the community, and make it difficult for plaintiff to obtain credit necessary in the operation of his mercantile business. He then alleges that he had theretofore received credit from different individuals and that thereafter his credit with those individuals was destroyed; that as a direct result he sustained damages in the sum of $30,000.

The defendant's answer was, in effect, a general denial of all the allegations of the complaint. For a further and separate answer defendant alleged: "that prior to the 19th day of November, 1930, this defendant had certain business dealings with the plaintiff herein, covering a period of several years and that on said 19th day of November, 1930, the said plaintiff and defendant entered into a written agreement, for a valuable consideration, wherein and whereby the plaintiff herein released and discharged the defendant herein of and from all claims and demands whatsoever. That because thereof this plaintiff is estopped and barred from instituting said action."

Plaintiff, in his reply, denied each and every allegation of defendant's further and separate answer and defense. On these issues the cause was tried. At the close of all the testimony defendant moved for a directed verdict. The motion was denied and the cause submitted to the jury who returned a verdict in favor of the plaintiff on which judgment was entered.

Defendant appeals.

The complaint was not attacked by motion or demurrer.

Plaintiff verified the complaint November 18, 1930, and filed it November 22, 1930. On November 19, 1930, plaintiff and defendant executed the following instrument:

"Memorandum of Agreement made and entered into this 19th day of November, 1930 between: Sam Weston of the city of Portland, County of Multnomah, State of Oregon, of the first part and M. Glickman of the said city of Portland, County of Multnomah, State of Oregon of the second part,

"Witnesseth:

"Whereas, the parties hereto have had sundry dealings and

"Whereas, accounts have this day been duly stated by and between the said parties.

"Now, therefore, in consideration of the premises, it is hereby mutually agreed as follows:

"That the said second party does hereby admit and declare that he is indebted to the first party in the sum of $1,500.00 over and above all counterclaims and offsets and does hereby release and discharge the first party of and from all claims and demands whatsoever.

"In Witness Whereof the parties hereto have set their hands and seals."

The first assignment of error is that the trial court erred in refusing to hold that plaintiff's cause of action, if any existed, was barred by the release thus pleaded and proven by defendant.

It will be observed that the complaint in this action was verified November 18, 1930. It is only the injury caused on or prior to that date for which the plaintiff seeks to recover damages. The release above quoted was executed on November 19, 1930. Plaintiff must have had in his mind at the time he executed the release all the differences existing between him and the defendant up to that time. The record discloses that plaintiff and defendant had had a great many business transactions, extending over nearly fifteen years, involving large sums of money, prior to the difficulty giving rise to the present action. During the summer of 1930 a dispute arose between the parties as to the amount of money that was due defendant from plaintiff; defendant claiming a sum in excess of $2,900 and plaintiff admitting no greater sum than $1,500. The matter drifted along for two or three months; meanwhile various efforts were being made to adjust the differences. It was out of these difficulties and while these matters were under negotiation that defendant is alleged to have made the slanderous statements against the plaintiff. The defendant placed his claim against plaintiff in the hands of the collection department of R. G. Dunn & Co. Before instructing the attorney for the collection agency to file action for the recovery of the amount, he consulted a mutual friend. This friend was able to bring the parties together and to an agreement. Both parties then went to the attorney for the collection agency and informed him that they had arrived at a settlement of the matter. The attorney thereupon reduced the agreement. to writing and it was then and there executed. The record also discloses that these parties for many years had been quite friendly socially, as well as in a business way. Immediately after the above memorandum of re-

lease was executed the parties shook hands with each other and each declared that they were again on the same basis of mutual friendship as formerly and repaired to a nearby coffee house, where they partook of coffee in token of the amicable relations thus established.

The release under consideration is in the nature of a written agreement, voluntarily signed and sealed by both parties in the presence of two subscribing witnesses. It is not attacked for want of consideration, mistake, imperfection, fraud, misrepresentation, duress, ambiguity (intrinsic or extrinsic) or on any other recognized ground. Plaintiff, in his reply, denies its execution. On the trial he admits its execution but attempts by oral testimony to avoid its import, without a pleading to that effect, by saying it was not intended to release any claim or demand for damages arising out of the slanderous words spoken. The only question raised by the pleadings is: was the release executed? That question was disposed of by the production of the instrument admittedly executed by both parties. This court, in construing or determining the effect of a written instrument, is bound by the rules of construction enacted into law by the legislative branch of the government.

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other

evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 9-216, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud.   *   *   *'' Oregon Code 1930, § 9-212.

''In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted;   *   *   *'' Oregon Code 1930, § 9-214.

■ We cannot, therefore, insert into this contract a provision that the parties intended to leave some things open and unsettled, or that they intended that the release should not cover any damages that might have been incurred prior to its execution.

''*   *   *   In the construction   *   *   *   of an instrument the intention of the parties is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former.   *   *   *'' Oregon Code 1930, § 9-215.

We cannot say that the instrument under consideration has any particular provision. Its provisions are general, ''all claims and demands whatsoever.''

''The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a technical, local or otherwise peculiar signification,   *   *   *   in which case the agreement shall be construed accordingly.'' Oregon Code 1930, § 9-217.

There is no issue raised by the pleadings in this case that the terms of the instrument or agreement were used in any other than their ordinary, ''primary and general acceptation.''

''When the terms of an agreement have been intended in a different sense by the different parties to it, that sense is to prevail, against either party, in which

he supposed the other understood it; and when different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made." Oregon Code 1930, § 9-220.

The record in this case discloses that the defendant, at the time the release was executed, believed that all the difficulties financially and otherwise existing between him and the plaintiff were settled and determined. The terms of the release would so indicate. The plaintiff, who had already signed a complaint for damages, should not be heard to say that notwithstanding he gave the defendant a release, for a valuable consideration, "from all claims and demands whatsoever," he intended all the time to except therefrom his claim for the damages that the slanderous words had occasioned and of which he knew all about when he signed the release. This release was made for the benefit of the defendant. Admitting for the sake of the argument only that it is susceptible of more than one construction, then that construction "is to be taken which is most favorable to the party in whose favor the provision was made."

The principles announced by adjudications of the courts in this and other states are to the same tenor and effect as the statute above cited. We must bear in mind the distinction between a receipt and a release.

"A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. It is the discharge of a debt by the act of a party in distinction from an extinguishment which is a discharge by operation of law. In distinguishing a release from a receipt it has been said that a 'receipt' is evidence that an obligation has been discharged but a 'release' is itself a discharge of it. No receipt can have the effect

of destroying per se any subsisting right; it is only evidence of a fact." 23 R. C. L. 375; Wood v. Young, 127 Or. 235 (271 P. 734).

"There is no contention that the release was procured by fraud or misrepresentation. Looking to the release itself and the facts and circumstances surrounding it, the claim upon which the present action is based falls within its terms, (Shannon v. Prall, 115 Wash. 106, 196 P. 635) and in the absence of fraud in obtaining such general release it will be sustained, even though the parties did not have in mind the alleged wrongs complained of (Willett v. Herrick, 258 Mass. 585, 155 N. E. 589), or which were not disclosed or known (Houston v. Trower, 297 Fed. 558) when the release was signed. The finding to the effect that the present claim is barred by the release is therefore correct." Parrish v. Page, 50 Idaho 87 (293 P. 979).

*Klopot v. Metropolitan Stock Exchange,* 188 Mass. 335 (74 N. E. 596); *Kirchner v. New Home Co.,* 135 N. Y. 182 (31 N. E. 1104); *Taggart v. Merchants etc.,* 38 Fed. (2d) 205.

■ In *Wood v. Young,* supra, a release was set up by answer as a defense and attacked by plaintiff in his reply on the ground of fraud. Thus admitting the release would be a bar in the absence of fraud. Evidence was introduced by the respective parties tending to support either theory. The court said that under such state of facts it was a question for the jury. Counsel for respondent has misconceived the purport of the decision in *Bigbee v. Coombs,* 64 Mo. 529, cited as an authority that the release in the instant case did not cover "all claims." That was not a case of a release but of a receipt, and is easily distinguished from the instant case. In the case at bar we find two friends, between whom some financial difficulties arose, sitting down in the presence of a mutual friend, for the purpose of adjusting their differences. They finally ar-

rived at what they believed a just and fair settlement. They then reduced the terms of their agreement thus arrived at to writing; one waiving one-half his claim, the other admitting himself justly indebted in the sum of $1,500 and releasing the former "from all claims and demands whatsoever." This language means just what it says; there is no contention that anything was excepted from the release. It is a complete bar to the action. It is unnecessary to pass on the other questions raised by appellant.

The motion for a directed verdict should have been allowed.

The judgment is reversed and the cause remanded with directions to enter a judgment dismissing the complaint and for costs and disbursements in favor of the defendant.

BEAN, C. J., BROWN and KELLY, JJ., concur.

---

Petition for rehearing denied July 12, 1932

ON PETITION FOR REHEARING
(12 P. (2d) 1005)

CAMPBELL, J. Counsel for respondent, who make their first appearance in this cause in a brief in support of the petition for rehearing, have filed a very insistent brief in support of the petition, in which they claim that the court erred in holding that the release executed by respondent does not cover the matters alleged in the complaint.

■ The point is made that there was no consideration for the release. The slanderous words grew out of certain business dealings between the parties, in which appellant claimed that respondent was indebted to him in the sum of $2,970, and respondent admitted an indebtedness in the sum of $1,500. Respondent now claims that he and appellant compromised this dispute

for $1,500, and the release given to him by appellant covered only the actual money accounts. In other words, according to his assertion, it was a sort of a "Min and Andy Gump" compromise. When Min desired to go to Florida and Andy wanted to go to California, they compromised by going to Florida.

The slanderous words grew out of the transactions they were compromising. Granting that appellant knew nothing of respondent's intentions to sue, respondent knew all about it. He had signed the complaint the day before. It was a matter then pending in his mind. The consideration of the release, was the remission of $1,470 from the claim of appellant and the reestablishment of a business and social friendship that had existed for many years.

It is not at all likely, that if appellant knew he was about to be sued for $30,000 for slanderous words, growing out of, and in fact a part of the very transaction under consideration, he would have reduced his claim against respondent practically one-half. There was ample consideration for the release. The cause of action for slander, at the time the release was executed, was of very doubtful value.

■ We agree with the law as laid down in the case cited by counsel, *Van Slyke v. Van Slyke,* 80 N. J. Law 382 (78 Atl. 179, 31 L. R. A. (N. S.) 778, Ann. Cas. 1912A, 498):

"In determining the effect of an instrument, containing words, that 'taken by themselves operate as a general release, all the provisions of the instrument must be read together; if on such reading, an intent to limit the scope of the release appears, it will be restricted to conform to such intent.'"

This is simply the general rule applied to the interpretation of any written instrument. It must be

construed by its contents as a whole in order to give it the construction the parties intended.

In *Simons v. Johnson and Moore,* 3 B. & A. 175, decided one hundred years ago, Lord Tenterden, Chief Justice, said in passing on the case:

"It is said we must look to the recital of the release, and find something there sufficient to confine the effect of the general words. If I do so here, I find that this was intended to operate as a qualified release. It states that disputes are subsisting between Simons and Johnson about which actions at law have been brought, and that it has been agreed, in order to put an end thereto, that each of them shall execute a release of all actions and causes of action, claims and demands. brought by him against the other. I cannot read this without seeing that the release which follows was intended to apply to the matter recited, namely, the actions then depending, and that the object was to put an end to them."

Counsel refers to "this very abbreviated general provision in the release." It is easily understood by the laymen, even if it does lack some of the grandiose redundancy of legal phraseology which might add lustre to the erudition of the attorney who prepared it, but is of little value as a means of conveying information to the person for whom it is intended.

The petition for rehearing will be denied.

It is so ordered.