Argued July 8, reversed October 23, petition for
rehearing denied December 10, 1968

## WELLS, *Respondent, v.* EVANS PRODUCTS COMPANY, *Appellant.*

446 P. 2d 108

*Sidney E. Thwing,* Eugene, argued the cause for appellant. With him on the briefs were Thwing, Ferris, Atherly & Butler, Eugene.

*Robert Mix,* Corvallis, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

GOODWIN, J.

Evans Products Company appeals from a judgment in an action brought under the Employers' Liability Law. ORS 654.305 to 654.335. The defendant assigns error to the trial court's refusal to direct a verdict upon proof that the injured workman had executed a compensation agreement and covenant not to sue.

The issues on appeal are concerned with the execution and performance of the agreement, which, for convenience, may be characterized as a release.

As a preliminary matter we dispose of plaintiff's contention made throughout the trial and on appeal that the release was void because not executed by Evans Products. The release was negotiated and executed on behalf of The Aetna Casualty and Surety Company by one of its claims adjusters, and his authority to act on behalf of Aetna was never questioned. The insuring agreements between The Aetna and Evans Products clearly authorized the insurer to settle claims on behalf of the employer; and the argument

that the agreement is void because it was not executed by an officer of Evans Products can be dismissed as captious.

■ A more important issue is whether the agreement was voidable. There was a serious question whether the injured workman, at the time he executed the release, was competent to enter into such an agreement. If he was not competent, the release was voidable. Without reciting all the evidence on the point, it is sufficient to observe that because of the serious nature of the workman's injuries, his confinement in the hospital, and the post-operative sedation, tranquilizing drugs, and pain-controlling medications given during the time in question, the jury could have found that the workman, at the time he executed the release, did not have the requisite mental capacity to enter into a binding agreement to accept compensation in lieu of damages in this case. *Parker v. Norton,* 143 Or 165, 175-176, 21 P2d 790 (1933); *Peluck v. Pac. Machine & Blacksmith Co.,* 134 Or 171, 178-179, 293 P 417 (1930).

Another issue is presented by the undisputed evidence that the workman, for several months after he was out of the hospital and fully possessed of his pre-injury mental capacity, accepted $290 per month in compensation benefits under the agreement which he had executed.

The employer now contends that even if the agreement was voidable when executed, the workman ratified the agreement as a matter of law. The workman, on the other hand, insisted throughout the trial that the agreement was void and thus not subject to ratification. The trial court rejected both contentions and submitted the question of ratification to the jury.

■ We believe that the evidence of ratification was

so one-sided that we must hold that the release, if voidable when executed, nonetheless became binding as a matter of law because it was ratified by the conduct of the workman.

The workman testified that he knew when he signed the agreement that he had given up some rights, but that he did not know until after he had talked with his attorney that he had given up the right to sue for damages. If this were the only evidence on the workman's state of mind while he was receiving some $7,500 in compensation payments, the question might have been a proper one for the jury.

The agreement was executed on October 5, 1965. The workman had a copy of the agreement in his possession at all times after he executed it. The agreement was sufficiently clear as to be understandable by a person of ordinary intelligence. The workman first talked to his attorney about his rights against his employer in June of 1966. He learned that he might have a basis for challenging the agreement under which he had signed away his right to sue, but he continued to draw benefits under the agreement until October 27, 1966, some three weeks after he commenced this action. In *Fisher v. Ochoco Lbr. Co.*, 179 Or 524, 531, 173 P2d 298 (1946), we held that the reasonableness of the workman's conduct in continuing to draw compensation made ratification a jury question. In that case, however, there was no evidence that the workman continued to accept payments after he had knowledge of his right to challenge the validity of the contract.

In *Reinhardt v. Weyerhaeuser Timber Co.*, 144 F2d 278 (9th Cir 1944), the court applied Oregon law and construed behavior somewhat similar to that of the plaintiff in the case at bar as a ratification of a ques-

tioned release. While the case turned on a finding that the release was valid when executed, ratification was an alternative reason for sustaining the release.

In the case at bar, the workman admitted that he knew in January of 1966 that he had given up at least some of his rights. He knew in June that he had signed a covenant not to sue. He sued in October. We believe that his continued acceptance of compensation payments after he saw his lawyer was wholly inconsistent with his present contention that he did not ratify the agreement with full knowledge of its meaning, whether or not the agreement was voidable when executed.

Reversed.