Argued April 30, affirmed July 19, 1973

WELLS, *Appellant, v.* MIX, *Respondent.*

512 P2d 788

*William A. Mansfield,* Medford, argued the cause for appellant. With him on the brief was Leonard J. Keene, Medford.

*George A. Rhoten,* Salem, argued the cause for respondent. On the brief were Gary G. Jones and Rhoten, Rhoten & Speerstra, Salem.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell and Bryson, Justices.

HOWELL, J.

Plaintiff filed this action for malpractice against his former attorney, who had represented him in an action for personal injuries under the Employers' Liability Law, ORS 654.305 to 654.335. The action, tried before the court without a jury, resulted in a judgment for defendant, and plaintiff appeals.

The facts are important. On September 22, 1965, the plaintiff sustained an industrial accident while in the employ of Evans Products Company. On October 5, 1965, while the plaintiff was in a hospital being treated for his injuries, he signed a compensation agreement and covenant not to sue. The agreement provided that plaintiff would receive compensation at a rate established by the Oregon Work-

men's Compensation Law. In consideration thereof he agreed not to bring an action against his employer. Pursuant to the agreement, the plaintiff received payments of $290 per month plus compensation for various medical expenses.

In July, 1966, the defendant attorney in the instant case was appointed counsel for the plaintiff in a criminal proceeding pending against plaintiff in the circuit court for Benton County. During the course of defendant's employment the plaintiff and defendant discussed the possibility of plaintiff having a claim against his former employer, Evans Products Co. In the meantime plaintiff continued to accept payments under the compensation agreement.

In October, 1966, the plaintiff filed an action under the Employers' Liability Law against Evans Products Co. The latter denied liability and alleged that plaintiff "with knowledge" of the compensation agreement had accepted benefits of $7,500 and therefore ratified the agreement. The plaintiff's reply alleged that the compensation agreement was executed while plaintiff was under the influence of drugs and medication and plaintiff was therefore "incompetent" to understand the agreement.

The action was tried before a jury and a substantial verdict rendered in favor of plaintiff. The defendant Evans Products appealed. *Wells v. Evans Products Co.*, 252 Or 17, 446 P2d 108 (1968). This court found it unnecessary to pass upon the validity of the compensation agreement because the plaintiff, by his acceptance of benefits after he had retained an attorney and after he had filed his action, had ratified the compensation agreement as a matter of law.

Subsequently the plaintiff filed this action for

malpractice against the defendant, alleging that the defendant was negligent in advising and permitting plaintiff to accept the payments under the compensation agreement. The defendant filed an answer denying the charges of negligence and alleging as affirmative defenses contributory negligence, the statute of limitations, and the fact that the plaintiff, by his acceptance of the payments, had ratified the compensation agreement before he retained defendant as his attorney.

After the trial in the instant case was concluded, the trial judge announced his decision that defendant was negligent but plaintiff's acceptance of benefits after the execution of the compensation agreement made plaintiff's case a "lost cause" before he retained the defendant as his attorney.

The court entered detailed findings of fact, stating that defendant was negligent in several particulars: he was aware that plaintiff had signed a compensation agreement and accepted benefits, but failed to advise plaintiff to refuse and reject the payments; he advised plaintiff to accept the payments; and he failed to advise plaintiff of the consequences of accepting the payments. The court stated, also as a finding of fact, that defendant's negligence was not the proximate cause of plaintiff's damage. No facts are stated to support this finding.

In the former case, *Wells v. Evans Products Co.*, supra, we held that plaintiff ratified the compensation agreement as a matter of law by acceptance of benefits after he had retained counsel. Clearly, the opinion did not decide—nor was it necessary to do so —whether ratification occurred before counsel was retained. The opinion states that plaintiff knew when

he signed the compensation agreement that he had given up some rights, but that he did not know until he talked with his attorney that he had given up the right to sue for damages. After talking with his attorney he learned of the possibility of challenging the validity of the compensation agreement. The court stated that, given only the facts that all plaintiff knew when he was accepting the benefits and before he retained counsel was that he had given up some rights when he signed the compensation agreement, but did not know that he had given up the right to sue for damages, "the question [of ratification] might have been a proper one for the jury." 252 Or at 20.

■ ■ Ratification occurs when the releasor, with full knowledge of the facts entitling him to rescind, engages in unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to ratification. *Union Pacific v. Zimmer,* 87 Cal App 2d 524, 197 P2d 363 (1948). *See also* 66 Am Jur 2d 703, Release § 27. Receipt of money in itself is not ratification unless accepted after the releasor knew or should have known that he had a case against his employer and the money was paid in satisfaction. *Allison v. Chicago Great Western Ry. Co.,* 240 Minn 547, 62 NW2d 374 (1954); 66 Am Jur 2d, supra at 703.

■ Generally, the question of whether ratification has occurred is a question of fact. 76 CJS 720, Release § 72; *Union Pacific v. Zimmer,* supra.

■ Among the factors to be considered in deciding whether the agreement was subsequently ratified are whether the agreement was understandable by a person of ordinary intelligence, the length of time the benefits under the agreement were accepted, whether the releasor knew that he had given up the right

to sue his employer, and when he acquired this knowledge.[1]

In the trial of the instant case the transcript and exhibits from the original case of *Wells v. Evans Products Co.,* supra, were introduced as exhibits. The record in both cases shows the following: The plaintiff admitted he was told at the time he executed the compensation agreement that it was a covenant not to sue Evans Products, his employer, and that he would receive certain benefits. He kept a copy of the agreement. He accepted approximately $6,900 in benefits from the time of the agreement until retaining counsel. He also admitted that in January, 1966, he was advised by his brother-in-law that he was "stupid" for signing the agreement, that he understood he had given up "some rights" he would have had if he had not signed the agreement, and that he continued to accept payments. A co-worker and friend of plaintiff testified

[1] At least one court has held that another factor to be considered is whether the releasor knew of his right to avoid the release because of the circumstances of its execution. Alabama & V. R. Co. v. Jones, 73 Miss 110, 19 So 105 (1895); contra 2 Restatement of Contracts 926, § 484, ill. 7. In Fisher v. Ochoco Lbr. Co., 179 Or 524, 173 P2d 298 (1946), this court held that a warning given to an injured workman by a hospital companion that he had been "overreached" when he signed a release was not sufficient to invoke "the rule that continuing to accept the benefits of an agreement after knowledge of its having been obtained by fraud" would constitute estoppel. That statement was mentioned by the court in the Wells v. Evans Products case to illustrate the fact that plaintiff accepted payments after he retained defendant as his counsel and knew that under proper circumstances a release could be declared invalid.

It is not necessary for us to decide whether ratification requires evidence that the releasor have knowledge that he may challenge the validity of the compensation agreement because of the circumstances of its execution. In the instant case, under its general finding, the court could have inferred from the evidence that plaintiff had such knowledge and continued to accept the benefits.

194

that he also had suffered an industrial accident while working for Evans Products and had signed a similar compensation agreement. He stated that he visited plaintiff several times at the hospital and was there a few days after plaintiff signed the compensation agreement on October 5, 1965. He testified:

"A    I had the same type of deal. I got my hand caught in a roller out there and I signed the same waiver not to sue and we discussed it. I mean, casually, and he said he signed the same thing.

"Q    Now, did he—what terms did he use in referring to the agreement?

"A    Well, he—I asked him if he signed a waiver not to sue the company and he said he did.

"Q    And did you at any time then thereafter discuss with Mr. Wells this agreement or any benefits that he was being paid under it?

"A    We talked about it. We compared what he was getting and what I was getting.

"Q    You had something in common that you both had a similar injury?

"A    Right.

"Q    Did Mr. Wells thereafter acknowledge to you at any time that he had signed a waiver not to sue or agreed not to sue the company?

"A    Well, he'd visit my house and I'd visit his house and the occasion would come up that we talked about it."

Plaintiff testified that he had no independent advice or advice of counsel when he signed the agreement, did not read the agreement, and did not know until he retained counsel that he had agreed not to sue his employer. That evidence was controverted. Plaintiff admitted that the agreement was read to him and he had no questions concerning it. The adjuster testified that he advised plaintiff that he had to make an

election to accept the benefits under the compensation agreement or initiate legal action against his employer.

■ Considering all the evidence, we believe that a question of fact was presented to the trial court as to whether plaintiff with full knowledge of the facts ratified the compensation agreement before he retained counsel. As previously noted, the trial court entered detailed findings that defendant was negligent in his advice to plaintiff but found as a fact such negligence "was not the proximate cause of loss or damage sustained by the plaintiff." No facts were recited to support such a finding. However, when we consider the court's oral decision that plaintiff's case was a "lost cause" prior to his retaining defendant as his counsel, it is clear that the court was finding as a fact that the evidence established ratification of the compensation agreement.

Affirmed.