Howard L. GRUVER, Lois H. Gruver,
Timberland Associates, Inc.,
Plaintiffs–Appellants,

v.

MIDAS INTERNATIONAL CORPORATION, Defendant–Appellee.

E. Patrick HALPIN, Plaintiff–Appellant,

v.

MIDAS INTERNATIONAL CORPORATION, an Illinois Corporation,
Defendant–Appellee.

Nos. 89–35680, 89–35749.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1990.

Decided Jan. 29, 1991.

Alexander A. Wold, Jr., Dwyer, Simpson & Wold, Eugene, Or., for plaintiffs-appellants.

Mildred J. Carmack, Schwabe, Williamson & Wyatt, Portland, Or., for defendant-appellee.

Before SCHROEDER, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Howard L. Gruver, his wife Lois Gruver and their wholly owned corporation Timberland Associates, Inc. ("the Gruvers"), and E. Patrick Halpin ("Halpin") appeal the district court's summary judgments for Midas International Corporation ("Midas") in the Gruvers' and Halpin's diversity suits against Midas for allegedly fraudulently selling them economically unviable Midas Muffler Shop franchises and related claims. We have jurisdiction under 28 U.S.C. § 1291 (1982). We affirm in part and reverse in part.

## BACKGROUND

In the light most favorable to appellants, the facts are as follows:

The Gruvers and Halpin purchased new Midas Muffler Shop franchises in 1983 and 1984, respectively. Midas had previously done market studies indicating that appellants' franchise locations would be unprofitable. Midas represented to appellants, however, that its studies indicated that the franchises would be profitable. The franchises lost money. The franchise agreements gave appellants the right to terminate their franchises on thirty days notice. Upon termination, however, appellants' accrued liabilities remained and Midas was entitled to prompt repayment of all money due. Midas could require that the franchisees sell all Midas parts in their inventory back to Midas, with the right to set off the repurchase price against money due from appellants.

Appellants approached Midas concerning terminating their franchises. In the Gruvers' case, Midas did not draw up a termination agreement until three and one-half months later. In the meantime, Midas refused to extend further credit to the Gruvers, requiring them to pay cash for all items purchased from Midas. In Halpin's case, Midas also cut off credit, but Midas drew up a termination agreement within approximately one month.

After brief discussions with their lawyers, appellants executed the termination agreements. The agreements provided that Midas would buy back the Gruver franchise for $95,160.60 and the Halpin franchise for $87,756.15. Midas also agreed to employ Halpin as a manager at another muffler shop. Most of the money

that appellants received, however, was paid back to Midas to satisfy appellants' debts or was paid to a bank to release liens on property which Midas owned.

The agreements also provided that appellants would release all claims they had against Midas. The Gruvers at this point knew that they had potentially successful fraud claims against Midas arising out of their purchases of the Midas franchises. Halpin did not have specific evidence to support such claims at this time, although Halpin suspected that evidence supporting some such claims existed and had discussed with his attorney the viability of such claims prior to signing his termination agreement.

Appellants subsequently sued Midas for fraud, breach of contract, and related claims in their purchases of the Midas franchises. Midas moved for summary judgment on the ground that appellants had in the termination agreements released these claims. Midas also sought, *inter alia,* the attorneys' fees it incurred in defending against appellants' claims as damages for appellants' breaches of their termination agreements.

Appellants claimed that the termination agreements were invalid because they entered into the agreements under economic duress. Finding no evidence of duress, the district court entered summary judgment for Midas, awarding Midas its attorneys' fees for defending against the fraud claims as damages for appellants' breaches of their termination agreements.

## DISCUSSION

We review the grant of summary judgment de novo. In these diversity cases, Oregon law controls.

### 1. *Economic Duress*

■ We agree with the district court that appellants have raised no triable issues of fact concerning whether they entered into their termination agreements under economic duress. Under Oregon law, to make out a prima facie case of economic duress, a plaintiff must show: (1) wrongful acts or threats; (2) financial distress

caused by those acts; and (3) the absence of any reasonable alternative to the terms presented by the wrongdoer. *Oregon Bank v. Nautilus Crane & Equip. Corp.,* 68 Or.App. 131, 683 P.2d 95, 103 (1984). Whether particular circumstances are sufficient to constitute economic duress is a question of law, although the existence of those circumstances is a question of fact. *Id.*

■ Appellants first argue that Midas' alleged misrepresentations in inducing them to purchase Midas franchises were wrongful acts under the economic duress analysis. However, these alleged misrepresentations did not involve the termination agreements—rather, the alleged misrepresentations involved the original franchise agreements and appellants' underlying misrepresentation claims. Thus, they are not wrongful acts for the purpose of the economic duress analysis. *Oskey Gasoline & Oil Co., Inc. v. Continental Oil Co.,* 534 F.2d 1281, 1288 (8th Cir.1976) (applying Minnesota law). Appellants have presented no evidence that Midas acknowledged the merit of appellants' fraud claims and the dollar value of appellants' alleged damages, yet in bad faith refused to settle these claims for that amount. *Cf. Rich & Whillock, Inc. v. Ashton Development, Inc.,* 157 Cal.App.3d 1154, 204 Cal.Rptr. 86 (Cal.App.1984) (where defendant in bad faith refuses to pay acknowledged debt to plaintiff who would go bankrupt without some payment and agrees to pay only a substantially smaller sum if the plaintiff executes a release of claim, economic distress exists); *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co.,* 584 P.2d 15 (Alaska 1978) (same). If acts such as Midas' could be sufficient for economic duress, one could never enter into an enforceable release of a claim for allegedly tortious conduct which caused another party financial distress.

■ Appellants also argue that Midas' terminating their credit line for purchasing Midas parts constituted a wrongful act. But Midas' contracts with appellants gave it the right to set the credit terms for appellants' purchases of Midas parts. The

exercise of a legal right is not a wrongful act. *See Oregon Bank*, 683 P.2d at 103. As appellants point to no evidence that Midas terminated appellants' credit in bad faith, the credit terminations were not wrongful acts for the purpose of economic duress analysis.

Appellants alternatively argue that Midas wrongfully delayed taking over their failing franchises. Halpin did not raise this argument below. We, therefore, decline to consider it on appeal. *See Animal Protection Institute of America v. Hodel*, 860 F.2d 920, 927 (9th Cir.1988) (failure to raise issue below generally bars consideration on appeal). As far as the Gruvers' claim goes, although it is undisputed that they had the right to terminate their franchises unilaterally on thirty days notice, it is possible that as a practical matter the Gruvers could not terminate their franchises without coming to an agreement with Midas or that Midas induced appellants not to terminate unilaterally. However, the Gruvers direct us to no evidence, and we have found none, to substantiate this possibility.

■ Finally, the Gruvers argue that Midas gave Mrs. Gruver insufficient time to review their termination agreement. Whether or not this alleged act, if proved, would be wrongful, it did not cause the Gruvers' financial distress. Thus, it does not support a claim of economic duress.[1]

### 2. *Attorneys' fees*

■ Appellants first seek reversal of the district court's attorneys' fees award on

the ground that their termination agreement stated that they released their underlying claims but did not explicitly state that they agreed not to sue on those claims. Thus, appellants' argument must be that there has been no breach of contract for which damages may be awarded. However, at least in the absence of an express contractual provision that one retains the right to sue on extinguished claims, it cannot seriously be maintained that when one releases his claims against another, thereby extinguishing any causes of action he might have had, *see Glickman v. Weston*, 140 Or. 117, 11 P.2d 281, 284 (1932), he nevertheless retains the right to sue on those extinguished claims. Formalistic distinctions to avoid the clear import of a contract are inconsistent with the covenant of good faith and fair dealing that Oregon law implies in every contract, *see Best v. United States Nat'l Bank of Oregon*, 303 Or. 557, 739 P.2d 554, 557 (1987).

■ Appellants next argue that attorneys' fees should be awarded for a breach of a release of claims agreement only when expressly provided for in the contract—as in any other breach of contract action, *see Samuel v. Frohnmayer*, 308 Or. 362, 779 P.2d 1028, 1031 (1989) ("the law has long been settled that such an award may be made only when a statute or contract provides such authority"). This argument requires more lengthy discussion.

We first note that here the attorneys' fees were incurred and awarded not as

**1.** Midas' argument that appellants may not rely on economic duress because they have not promptly disaffirmed their termination agreements and returned all the benefits they received from those agreements lacks merit. While the law is clear that a court will not rescind a contract unless the party seeking recision promptly disaffirms the contract, *Porras v. Bass*, 665 P.2d 1249, 1250–51 (Or.App.), *petition denied*, 295 Or. 840, 671 P.2d 1176 (1983), no Oregon court has applied this to invalidate a claim of economic duress in signing an agreement containing a release of claims. The whole point of an economic duress claim is that the plaintiff had no reasonable choice but to enter into the contract. The facts of this case do not require us to determine whether appellants raise a triable issue of fact concerning whether

they had any reasonable alternative to signing their termination agreements. But when a plaintiff has no reasonable choice but to enter into a contract, the plaintiff cannot reasonably be expected immediately to return the benefit he received from that contract. It would, thus, be at odds with the purpose of the economic duress rule to bar claims of economic duress for failure to disaffirm the transaction. *See Rich*, 204 Cal.Rptr. at 90 (under economic duress analysis, a suit for breach of contract may not be a reasonable alternative to signing a release of claims agreement where the plaintiff is on the brink of bankruptcy); *Totem*, 584 P.2d at 22–24 (same). Traditional set-off rules, reducing a successful plaintiff's damages by the value of any benefit he has already received, are sufficient to protect a defendant's interests.

payment for expenses in litigating the breach of contract, but as expenses incurred as a result of the breach. Midas also requested attorneys' fees for that portion of its time in the suits allocable to its litigating the validity of the release of claims provisions in the termination agreements. The district court denied Midas these fees. There are cases in a minority of jurisdictions supporting what the district court did here. *See, e.g., Desroches v. Ryder Truck Rental, Inc.,* 429 So.2d 1010 (Ala.1983); *Colton v. New York Hosp.,* 53 A.D.2d 588, 385 N.Y.S.2d 65 (1976). There are no such decisions, however, from the Oregon appellate courts. The most recent and comprehensive review of the cases in this area is *Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990), where the Colorado Supreme Court adopted the majority view that under the American rule, attorney's fees are not awardable where there has been a breach of a release and covenant not to sue unless attorney's fees were provided for in that release.

The Oregon courts, particularly in recent cases interpreting O.R.S. 20.096, enacted in 1971, have repeatedly stressed their strict adherence to the American rule that attorney's fees are recoverable in a breach of contract action between the parties to the contract only where the contract provides for them. *See, e.g., Samuel v. Frohnmayer,* 308 Or. 362, 779 P.2d 1028 (Or.1989) ("[c]oncerning the authority of an Oregon court to award attorney fees, the law has long been settled that such an award may be made only when a statute or contract provides such authority."); *Glaser v. Rock Creek Country Club,* 68 Or.App. 536, 683 P.2d 114, *review denied,* 297 Or. 781, 687 P.2d 796 (1984).

There is no dispute that attorney's fees can be considered as an element of damages flowing from a violation of the attorney-client relationship without a specific contractual provision to support the award. *See Sizemore v. Swift,* 79 Or.App. 352, 719 P.2d 500 (1986) (attorneys' fees from suit to construe will were awarded as part of the damages arising from legal malpractice that consisted of negligent drafting of that will). Similarly, attorney's fees are recov-

erable in a suit by a lawyer suing a client who has not paid. *See Smallwood,* 793 P.2d at 161. This is not such a case. The fees were incurred in enforcing the provision of a contract which did not provide for fees. We conclude that under existing Oregon law, the fees should not have been awarded.

The judgment of the district court is AFFIRMED in part and REVERSED in part.