**Francis J. HASLACH, Plaintiff,**

v.

**SECURITY PACIFIC BANK OREGON, an Oregon banking corporation, Defendant.**

**Civ. No. 90–1133–RE.**

United States District Court, D. Oregon.

June 27, 1991.

---

Karen R. Tashima, Shannon, Johnson and Bailey, P.C., Portland, Or., for plaintiff.

Jonathan T. Harnish, David J. Riewald, Bullard, Korshoj, Smith & Jernstedt, P.C., Portland, Or., for defendant.

## OPINION

REDDEN, Chief Judge:

Plaintiff was terminated from his employment as a senior sales officer with defendant's real estate department on 5 September 1989 at age 63. In his amended complaint, plaintiff claims defendant violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Plaintiff also seeks relief for breach of contract, breach of implied covenant of good faith and fair dealing, or, in the alternative, wrongful discharge.

Defendant brings forth counterclaims alleging fraudulent misrepresentation and breach of a release agreement, and moves for summary judgment against plaintiff's claims and for its counterclaim for breach of the release agreement. For the reasons stated below, defendant is granted summary judgment as to plaintiff's claims, and its counterclaims are dismissed.

FACTS:

On 5 September 1989 plaintiff was notified that his position was being eliminated, and was given two options (besides retiring): Option 1, receive five weeks' severance pay, continue receiving fringe benefits for five weeks, be allowed to apply for any other position for which he was qualified within defendant's affiliations for 30 (paid) days, and receive eight hours free professional placement services.

Under option 2, plaintiff would receive $72,000 in severance pay ($6,000 per month over one year), continue receiving fringe benefits until 31 August 1990, receive a monthly payment of $100 beginning in October 1990 and continuing for life, and receive $2,000 toward the cost of receiving

his commercial real estate license. Plaintiff was told that eligibility for either option required that plaintiff sign a severance and release agreement, which stated:

> In consideration of these payments and benefits, you have agreed to completely and fully release the Bank from any claim or potential claim which you may have against the Bank, now or in the future, for any reason whatsoever, including but not limited to, any state of federal claim based upon policy, contract, age (i.e.—the Age Discrimination in Employment Act), sex, race or statute (not including worker's compensation, if applicable).

The agreement did not address payment of attorney fees and costs in the event a suit was brought.

Between 6 September and 20 September 1989, plaintiff and defendant negotiated the language of the release agreement; on 20 September 1989, plaintiff selected option 2 and signed the agreement. There is no dispute that plaintiff has received all of the benefits to which he has been entitled under the agreement.

On 20 July 1990, plaintiff read a newspaper article that prompted him to question whether the release he signed was valid and enforceable. On 30 July 1990 plaintiff wrote to the EEOC raising questions about the legality of the waiver. On 7 August 1990 plaintiff wrote a 14–page letter to defendant, alleging defendant's "bad faith" regarding a variety of situations in plaintiff's employment history with defendant, including plaintiff's termination. On page 8 plaintiff addressed the separation agreement's waiver:

> That waiver has me giving up my rights to 'post facto' raising any issues on age discrimination and any other matters. A pertinent issue that need be raised centers on the validity and legality of the waiver itself.
>
> \*    \*    \*    \*    \*    \*
>
> The issue then is the illegality of the waiver. It may have been such that the

clock stopped ticking. That is an issue worthy of investigation.

On page 13, plaintiff stated,

> If the Bank agreed to compensate me in a lump sum payment of the above noted dollars [$96,000] (to be paid in January 1991) I would accept, as originally required, retirement in this current year.
>
> \*    \*    \*    \*    \*    \*
>
> I would hope the response will be as positive as I propose so that I may secure my files "voluntarily" and agree to take no further action based on the contents to ensure my "relationship" with the Bank ends up as a good one with my retirement.

One day later, on 8 August 1990, plaintiff filed an age discrimination charge with the EEOC, formally filed on 14 August 1990. In October 1990, plaintiff filed a complaint in the Circuit Court of Multnomah County alleging age discrimination, breach of contract, and wrongful termination. This action was removed to federal court on 6 November 1990.

There is no dispute that plaintiff retained the benefits arising from the separation agreement after filing this lawsuit, and did not offer to tender the benefits until after defendant filed this motion. Defendant contends that regardless of whether plaintiff knowingly and voluntarily signed the release or signed it under duress and in reliance upon a misrepresentation, plaintiff has since ratified the agreement by retaining consideration he received pursuant to that agreement. Defendant moves for summary judgment on these grounds.

STANDARDS:

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of

a dispute is determined by whether the evidence is such that a reasonable party could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party shows that absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *T.W. Electrical,* 809 F.2d at 630.

DISCUSSION:

█ Defendant relies on *Grillet v. Sears, Roebuck and Co.,* 927 F.2d 217 (5th Cir.1991). In that case, the 5th Circuit ruled that an employer-defendant was entitled to a summary judgment because the employee alleging discrimination had signed a waiver of such claims. The case involved a 60–year–old personnel representative for Sears who was terminated and given the choice of accepting 10 weeks' severance pay or obtaining 50 weeks' severance pay by signing a release waiving any claims she might have against Sears. A week after selecting the 50–week option and executing the waiver, the ex-employee learned that three younger people were given new assignments in her department. She continued to accept the severance payments, however, and brought an age discrimination suit well over a year after her termination. The suit alleged that the release was ineffective because the employee signed it under duress and in reliance upon a misrepresentation. The defendant appealed the district court's denial of its summary judgment motion on the ADEA claim,

and the Circuit Court ruled that even if the employee's release was tainted by misrepresentation, she ratified the release by keeping its benefits for an unreasonably long time.

A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract. If a releasor, therefore, retains the consideration after learning that the release is voidable, her continued retention of the benefits constitutes a ratification of the release.

*Id.* at 220. The court rejected the plaintiff's argument that ratification was inapplicable because she offered to pay back the severance pay. The court noted that the offer came two years after she learned of the alleged misrepresentation, and was "too little, too late." *Id.* The court reasoned that the plaintiff "should have returned the consideration soon after she learned that some younger employees in her department had not been terminated. Instead, she kept the benefits of the release for two years after she discovered the alleged misrepresentation. It is simply too late for [plaintiff] to avoid ratification." *Id.* at 221, citations omitted.

*Grillet's* facts are similar to the facts presented here. Plaintiff's first attempted tender of the severance pay came after defendant's motion for summary judgment, some ten months after plaintiff first questioned the validity of the release. While a shorter period of time than in *Grillet,* the court in that case reasoned that the law of contracts requires a party claiming wrongful inducement to seek rescission *shortly after* discovering the misrepresentation. *Id.*

In *Morta v. Korea Ins. Corp.,* 840 F.2d 1452, 1455, n. 4 (9th Cir.1988), the court acknowledged that Guam law requires a plaintiff to return consideration received for signing a release as a prerequisite to rescission on any ground except for fraud. After this acknowledgement, *Morta* cites *Graham v. Atcheson, T. & S.F. Ry.,* 176 F.2d 819, 826 (9th Cir.1949): "Except where fraud enters into the execution of a

release, rescission must be timely and a tender of the consideration received for the release must be made."

The Oregon Supreme Court has stated:

If [a party] desires to rescind, he must act promptly, and return, or offer to return, what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract.

*Amort v. Tupper*, 204 Or. 279, 285, 282 P.2d 660, 663 (1955), *quoting Scott v. Walton*, 32 Or. 460, 464, 52 P. 180, 182 (1898) (citations omitted).

In this case, plaintiff first questioned the validity of the release agreement in July 1990. He contacted the EEOC, attempted to re-negotiate with defendant, filed a complaint with the EEOC, and finally, in October 1990, initiated this lawsuit. At no point during this time did plaintiff offer to tender the benefits received for signing the agreement back to defendant. His offer to tender was not made until after defendant moved for summary judgment, approximately ten months after first questioning the release agreement. This retention of the benefits is sufficient to amount to a ratification of the release agreement, regardless of whether it was initially signed under duress or misrepresentation. *Grillet*, 927 F.2d at 220; *Morta*, 840 F.2d at 1455.

Plaintiff's arguments have been considered, and are unpersuasive. Two contentions merit attention: that ratification should not apply because plaintiff is now ready to tender the severance pay to defendant, and that in Oregon, ratification requires conduct from which it can be reasonably inferred that the releasor intended to ratify.

Plaintiff contends that defendant's authorities supporting ratification are all cases in which the releasor waited at least one year before tendering. Plaintiff offers no authority for the proposition that ratification occurs after a party has retained a contract's benefits for at least one year.

█ Plaintiff's assertion that in Oregon, ratification requires conduct from which it can be reasonably inferred that the releasor intended to ratify, rests on *Wells v. Mix*, 266 Or. 188, 192, 512 P.2d 788, 790 (1973), in which the Oregon Supreme Court said:

Ratification occurs when the releasor, with full knowledge of the facts entitling him to rescind, engages in unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to ratification.

The court stated that whether ratification occurred is generally a question of fact. In that case, however, the court acknowledged a dispute over a material fact: whether plaintiff knew of his right to sue when accepting the release agreement's benefits. Plaintiff here refers to no questions of fact, and raises only the issue of plaintiff's intent to void the release (or, more precisely, his purported *lack of intent* to ratify) when he wrote to defendant in August 1990. I conclude that this question is not an issue of material fact.

Assuming without agreeing that *Wells* states the law of contract ratification properly, the decision offers no support to plaintiff. Immediately after including the releasor's intent in the elements of ratification, the court also stated: "Receipt of money itself in itself is not ratification unless accepted after the releasor knew or should have known that he had a case against his employer and the money was paid in satisfaction." *Wells*, 266 at 192, 512 P.2d at 790.

Plaintiff may have suspected he had a claim as early as his termination date (he negotiated the release himself); he certainly contemplated making a claim in late July 1990, when he read the newspaper article and contacted the EEOC; and later when he met with counsel. He knew he had a claim in October 1990, when this suit was filed. Plaintiff's retention of the benefits

throughout this time amounts to ratification even under a *Wells* intent requirement.

■ Secondly, plaintiff's 8 August letter to defendant requests a modification of the release agreement's terms to the effect that plaintiff would receive an additional $96,000. While plaintiff does raise the question of the release's validity in the letter, he never states he is rescinding it. If anything, the attempt to *modify* the agreement may suggest an intention to ratify it. Plaintiff's other arguments have been considered and are unpersuasive. Defendant's motion for summary judgment, as against plaintiff's claims, is granted because plaintiff ratified the release agreement.

## SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM:

■ Defendant also asserts that it is entitled to summary judgment on its counterclaim for plaintiff's breach of the release agreement. Defendant cites *Widener v. ARCO Oil and Gas Co.*, 717 F.Supp. 1211 (N.D.Tex.1989), a case in which the district court held that a breach of a release may be grounds for an action for damages. The court limited the damages a releasor suffers when the release is breached to its costs and attorney's fees incurred in defending against the wrongfully brought action. "The damages suffered by Defendant as a result of this breach are the amount of its costs and attorneys' fees expended in defending th[e] action." *Id.* at 1217.

A recent Ninth Circuit case, however, adopts "the majority view that under the American rule, attorney's fees are not awardable where there has been a breach of a release and covenant not to sue unless attorney's fees were provided for in that release." *Gruver v. Midas International Corp.*, 925 F.2d 280, 284 (9th Cir.1991).

The court goes on to state:

The Oregon courts, particularly in recent cases interpreting O.R.S. 20.096, enacted in 1971, have repeatedly stressed their strict adherence to the American rule that attorney's fees are recoverable in a breach of contract action only where the contract provides for them.

\*    \*    \*    \*    \*    \*

The fees [here] were incurred in enforcing the provision of a contract which did not provide for fees. We conclude that under existing Oregon law, the fees should not have been awarded.

*Id.* (citations omitted).

This court agrees with defendant's cited authority insofar as it identifies the damages in a breach of release case as attorney fees and costs. Since these are not recoverable in Oregon unless contractually allowed, defendant's motion for summary judgment on its counterclaim is denied.

Plaintiff moves to strike defendant's second amended counterclaims, or in the alternative, to dismiss them under Fed.R.Civ.P. 12 for failure to plead damages. I grant defendant leave to file its second amended Answer and counterclaims, but also grant plaintiff's motion to dismiss these amended counterclaims. Defendant fails to distinguish its alleged damages ("employees' time") from attorney's fees, which, as discussed above, are not recoverable in this case.

## CONCLUSION

Defendant's summary judgment motion is granted as to plaintiff's claims, but denied as to defendant's counterclaims; defendant's counterclaims are dismissed. There being no further claims remaining between the parties, this action is dismissed.