**Glenn WIDENER and Mohammed S. Mozumder, Plaintiffs,**

v.

**ARCO OIL AND GAS COMPANY, DIVISION OF ATLANTIC RICHFIELD COMPANY, Defendant.**

**No. Civ. A. 3–88–0634–T.**

United States District Court, N.D. Texas, Dallas Division.

May 23, 1989.

Yona Rozen, Hicks Gillespie James Rozen & Preston, P.C., Dallas, Tex., for plaintiffs.

Bennett W. Cervin Steven W. Sloan, Thompson & Knight, Dallas, Tex., for defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SETTING JURY TRIAL ON DAMAGES

MALONEY, District Judge.

On October 17, 1988, Defendant filed its Motion for Summary Judgment. Plaintiffs filed their response on December 23, 1988 and their supplemental response on January 4, 1989. Defendant filed its reply on January 31, 1989.

### BACKGROUND

This action was brought pursuant to 29 U.S.C. § 621 *et seq*, Age Discrimination in Employment Act, ("ADEA"). Prior to their termination Widener and Mozumder were employed as geophysicists. On March 31, 1986, both Plaintiffs were given a letter placing them on "surplus" status. The pertinent provisions of this letter provide:

You are placed on "surplus" status, effective March 31, 1986. As a surplus employee, you will be continued on the payroll for a notice period of up to a maximum of 60 days. If you have not

been placed in another position by May 30, 1986, your employment will be terminated and you will become eligible for benefits under the provisions of either the Company's Special Termination Plan or the Enhanced Retirement Program (including a Special Termination Allowance)....

As a result of the Company's consolidation, if you are a member of the Atlantic Richfield Retirement Plan, you will become vested in your accrued retirement benefit at your termination of employment.

You must elect, in writing, either the Special Termination Plan or the Enhanced Retirement Program prior to your termination date. If no election is made, you will automatically become eligible for the enhanced retirement benefits. To be eligible for payments of either the Special Payment Allowance or the Special Termination Allowance, it will be necessary for you to execute the required release documents.

Accompanying these letters was an informational packet that outlined the enhanced retirement program and the special termination plan. This material provided a more complete explanation of the two separate packages and the benefits under each. The informational material highlighted the benefits available under the enhanced retirement program. It also pointed out in a separate section that a Special Payment Allowance was available upon the execution of the required release document. The informational package twice stated that Plaintiffs would be required to execute release documents in order to receive a payment under the Special Payment Allowance. Finally, the informational packet instructed Plaintiffs to contact Defendant's benefits specialist, Barbara Hough, should they wish to elect either plan.

Thereafter, both Plaintiffs contacted Hough. Although the record does not reflect when Plaintiffs first contacted Hough, the record does reflect that Mozumder signed his benefits papers on April 29, 1986 and Widener signed his benefit papers on May 13, 1986. Within the papers that each Plaintiff signed was a document entitled, "Enhanced Retirement Program Special Payment Documentation, Acknowledgement and Payment Schedule." This document was provided to each employee who elected to receive the Special Payment Allowance. This document contains a place for the employee to elect either a lump sum payment or a deferred payment until January of the following year, a place for naming a beneficiary and a place for executing a general release. The form provides a place for the employee's signature and a witness' signature under both the election of payment method and the execution of the release. The release provides:

Notice: Various State and Federal laws prohibit employment discrimination based on age, sex, race, color, national origin, religion, handicap or veteran status. These laws are enforced through the Equal Employment Opportunity Commission (EEOC), Department of Labor and State Human Rights Agencies. If you feel that your election of the Atlantic Richfield Special Payment Allowance was coerced and is discriminatory, you are encouraged to speak with your Employee Relations representative or follow the steps described in the Employee Problem Resolution procedure. You may also want to discuss the following release language with your lawyer. In any event, you should thoroughly review and understand the effect of the release before acting on it. Therefore, please take this Release home and consider it for at least (5) working days before you decide to sign it.

**General Release:**

**In consideration for the Special Payment Allowance under the Atlantic Richfield Special Termination Plan offered to me by the Company I release and discharge the Company, its successors, subsidiaries, employees, officers and directors (hereinafter referred to as "the Company") from all claims, liabilities, demands, and causes of action known or unknown, fixed or contingent, which I may have or claim to have against the Company as a result of this termination and do hereby cove-**

nant not to file a lawsuit to assert such claims. This includes but is not limited to claims arising under federal, state, or local laws prohibiting employment discrimination or claims growing out of any legal restrictions on the Company's right to terminate its employees. **This release does not have any effect on any claim I may have against the Company unrelated to this termination.**

**I have carefully read and fully understand all of the provisions of this Separation Agreement and General Release which sets forth the entire agreement between me and the Company and I acknowledge that I have not relied upon any representation or statement, written or oral, not set forth in this document.** (Bold type in original.)

Both Plaintiffs' signatures appear immediately below the release. These signatures were dated and witnessed by Hough. After execution of the releases, Plaintiffs were paid lump sums as their Special Allowance Payment in consideration for the execution of the release. Widener was paid $13,145.38 and Mozumder was paid $4,248.72. Plaintiffs admit that they signed the release and admit that they have not returned the Special Payment Allowance monies.

Defendant argues that the releases are dispositive of Plaintiffs' claim. Defendant asserts that Plaintiffs voluntarily and knowingly executed the releases and therefore, as a matter of law, Plaintiffs' claims should be dismissed. Defendant also asserts that any denial of the existence of the releases by Plaintiffs is moot because Plaintiffs' post-termination conduct of retaining the consideration, the Special Payment Allowances, acted as a ratification of the releases. Finally, Defendant argues that if the releases are valid, they may be used as the basis for Defendant's counterclaim for breach of contract, in that, Plaintiffs have filed this action in violation of the specific terms of the releases. Therefore, Defendant argues that it is entitled to its costs and attorneys' fees to defend this action.

Plaintiffs' only reply to Defendant's motion for summary judgment is that the releases were not voluntarily and knowingly given. In support of their position, Plaintiffs have submitted affidavits that assert Defendant, through Hough, never orally informed them of the release language and instructed Plaintiffs that they had to make decisions about their benefits the day they went to Hough's office and were told that they had to sign all the documents in the personnel office before they left. Plaintiffs state that Hough did not orally inform them of what they were signing and that they did not read the release document and, therefore, were unaware of the release. Plaintiff also argues that the release document is not specifically entitled a release and, therefore, the release signed by them is confusing.

While Plaintiffs' affidavits attempt to raise an issue of fact, the question before the Court is whether Plaintiffs have raised a genuine issue of material fact sufficient to prevent summary judgment from being entered. The Court finds that Plaintiffs' affidavits do not raise a genuine issue of material fact such that a reasonable juror could find in their favor.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment should only be entered where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.Proc. The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

## THE RELEASE

■■■ A general release of employment discrimination claims does not ordinarily violate public policy. *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir. 1986). Such releases apply to all claims of employment discrimination, be they claims of race, gender or age discrimination. *Bodnar v. Synpol, Inc.*, 633 F.Supp. 13, 15 (E.D.Tex.1986), *aff'd*, 843 F.2d 190 (5th Cir. 1988). To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII. *United States v. Allegheny–Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). However, a release waiving legal rights arising from discriminatory acts or practices must be both knowing and voluntary. *Rogers*, 781 F.2d at 454. *See also, EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1091 (5th Cir.1987); *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 540 (8th Cir.) *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1041 (6th Cir.) (en banc), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986).

Both *Lancaster* and *Runyan* involved the release of ADEA claims. Those Courts of Appeals applied ordinary contract principles in deciding whether an ADEA waiver was enforceable. However, in an almost identical case, *Cirillo v. ARCO Chemical, Co.*, 862 F.2d 448 (3rd Cir.1988), the Third Circuit adopted a totality of the circumstances approach, evaluating the release form and the circumstances under which it was signed. As the Fifth Circuit has not adopted a specific approach with regard to ADEA releases, the Court will analyze the release under both tests. However, the Court finds under either test the release is enforceable.

### A. *Voluntariness.*

■■■ The Court finds that Plaintiffs' conclusory statements that the releases were not voluntarily signed are insufficient. Plaintiffs have not supplied the Court with any evidence that Defendant used undue influence or fraud to obtain Plaintiffs' signatures, nor have they affirmatively pled or shown mistake to void the releases. Instead, the undisputed facts show that the March 31 letters placing them on surplus status informed Plaintiffs that a release would be required to receive the Special Payment Allowance. There is no credible evidence that Plaintiffs could not take the benefits material home nor is there any evidence that Plaintiffs sought to take them home. In particular, the Court notes that the notice portion of the releases specifically instructed Plaintiffs to take the release home to consider it for five days prior to executing it.

■■■ Plaintiffs' argument that the release was not voluntary ignores the longstanding and generally accepted principle of contract law that, absent fraud or mental incompetence, a person who intentionally signs a document is bound by its contents, whether or not he in fact reads the document. *Donovan v. Mercer*, 747 F.2d 304 (5th Cir.1984); *Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817 (5th Cir. 1975). The releases specifically provide that the terms were understood and Plaintiffs did not rely on any representations or statements, written or oral, in executing the releases.

### B. *Knowingly.*

The Court finds that Plaintiffs' allegations that they did not know that they were signing the releases is without merit. The release form is clear and unambiguous. The language of the release is contained on the front side of the document, the term general release is clearly set forth, and the size of the lettering is identical throughout the document. In fact, the language of the release is in bold type. Furthermore, the release is contained within PART II of the form. The first section of PART II contains instructions to carefully read and select the method of payment and to nominate a beneficiary if death should occur before the payment was made. Each Plain-

tiff designated his intended beneficiary by handwriting in his selection. Immediately following this handwritten selection was the notice and release provision. At the end of the release clause a space was provided for the employee's signature. Each Plaintiff also signed the portion of the document acknowledging the release. Furthermore, in Widener's release, he originally chose to be paid in January of the following year but subsequently changed his mind and initialed that he desired to be paid an immediate lump sum. The Court finds that Widener's correction of the method of payment would lead a reasonable juror to believe that Widener read the release document in its entirety.

Of particular importance to the Court is the placement of the release within the document. The release form instructed Plaintiffs to read PART II very carefully and required them to make certain choices. The release itself was set out in bold print and also required the employee's signature immediately following the release clause. The release was not found on a separate benefits page that required no signature or merely initials. Instead, the Court finds that the document draws the attention of the employee to the release portion and, therefore, a reasonable juror would find that the release was knowingly executed.

Based upon the evidence before the Court, the Court does not find that reasonable jurors could find that Plaintiffs did not read the release form before they signed it and that it was not voluntarily and knowingly executed.

C.  *Totality of the Circumstances.*

In *Cirillo,* the Court of Appeals set forth seven relevant factors in considering the totality of the circumstances in determining the validity of a release: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether the plaintiff knew or should have known his rights upon execution of the release; (5) whether the plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the release; and (7) whether the consideration given in exchange for the waiver and accepted by the plaintiff exceeds the benefits to which the plaintiff was already entitled to by contract or law.

First, in construing an identical release in *Cirillo,* the Third Circuit found the text of the release was straightforward, clear and specific. In fact, that Court found that it would be hard pressed to draft a release that was clearer than that signed by the plaintiff. This Court agrees that the release is clear and straightforward. Second, Plaintiffs in this action are highly educated. Widener has a bachelor's degree in mathematics and physics and a master's degree in business administration. Mozumder has a bachelor's degree in physics, mathematics and geology and a master's degree in geology. Third, while Plaintiffs allege that they had to sign the release the same day they were presented with the form, the clear and unambiguous language of the release advised Plaintiffs to seek counsel and take up to five days to consider the release.

Fourth, Plaintiffs, as highly educated men, should have been able to read and understand their rights upon execution of the release and Defendant was not under an affirmative obligation to explain their legal rights to them. Fifth, the express language of the release advises Plaintiffs to seek the advice of counsel. The Court does not find the sixth factor to be applicable. Finally, it is undisputed that the special payment allowance obtained by Plaintiffs as consideration for the release exceeded the benefits that they were otherwise entitled to. The informational package of material provided Plaintiffs on March 31 clearly stated that Plaintiffs were entitled to certain benefits as a consequence of their termination and the Special Payment Allowance was in addition to these benefits.

The Court, having considered both ordinary contract principles and the seven factors as set forth in *Cirillo,* finds that the releases signed by Plaintiffs were both

voluntarily and knowingly made and, therefore, the releases signed by Plaintiffs are effective to extinguish the claims asserted by Plaintiffs.

## PLAINTIFFS' RATIFICATION OF THE RELEASE

Assuming that Plaintiffs did not voluntarily and knowingly sign the releases, the undisputed facts demonstrate that Defendant is nevertheless entitled to summary judgment. Widener and Mozumder do not dispute that they received $13,145.38 and $4,248.72, respectively, in consideration for the releases that they signed. Nor do they dispute that they have failed to return or tender-back the monies. Rather, Plaintiffs' response to Defendant's assertion of ratification of the releases is that Defendant's argument is without support in a ADEA context.

A party cannot be permitted to retain the benefits which he has received under a contract, and at the same time escape the obligations which such contract imposed upon him. *Rachesky v. Finklea* 329 F.2d 606 (4th Cir.1964). Thus, if the releasor retains the consideration after he learns that the release in voidable, his continued retention of the benefits constitutes a ratification of the release. *Morta v. Korea Ins. Corp.*, 840 F.2d 1452 (9th Cir. 1988); *Anselmo v. Manufactures Life Ins. Co.*, 771 F.2d 417 (8th Cir.1985); *DiRose v. PK Management Corp.*, 691 F.2d 628 (2nd Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Rickman v. Cone Mills Corp.*, 659 F.Supp. 412 (D.Kan.1987).

Therefore, even if Plaintiffs did not know that they signed a release until they were informed of the release by their counsel following Defendant's pleadings, Plaintiffs have failed to tender to Defendant the return of the monies paid as consideration for the releases and have retained the benefits of the monies.[1] Therefore, the Court finds

that Plaintiffs have ratified the release through their conduct.

## PLAINTIFFS' BREACH OF THE RELEASE

Contract principles apply to the interpretation of releases. *Bartel Dental Books Co., Inc. v. Schultz*, 786 F.2d 486 (2nd Cir.), *cert. denied*, 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 713 (1986); *Bank of America v. Gillaizeau*, 766 F.2d 709 (2nd Cir.1985). The breach of a release may be grounds for an action for damages. *Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters*, 700 F.2d 1067, 1071–72 (6th Cir.), *cert. denied*, 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 92 (1983); *Borbely v. Nationwide Mutual Ins. Co.*, 547 F.Supp. 959, 977 (D.N.J.1981). Because the purpose of entering into a release is to avoid litigation, the damages a releasor suffers when the release is breached are its costs and attorneys' fees incurred in defending against the wrongfully brought action. *Id.*

It is clear from the discussion above that Plaintiffs received consideration in exchange for their promise not to bring a law suit. Because the Court finds the release to be valid, whether voluntarily and knowingly given or ratified by Plaintiffs' conduct, Plaintiffs have breached the express terms of the release by filing this action. Therefore, the Court finds that Plaintiffs are, as a matter of law, liable for the breach of the release.

The damages suffered by Defendant as a result of this breach are the amount of its costs and attorneys' fees expended in defending this action. Because Defendant has failed to submit proper summary judgment evidence as to its damages and this action was requested to be tried by jury, the Court finds that the amount of Defendant's damages raises a question for the trier of fact.[2]

---

1. The Court notes that Plaintiffs have not raised by answer to Defendant's counterclaim any affirmative defenses of fraud or undue influence in the signing of the release. Instead Plaintiffs have taken the position that the release was not voluntarily or knowingly given as argued above.

2. Plaintiffs only response to Defendant's claim for damages is that defendants are not ordinarily awarded attorneys' fees for prevailing on a ADEA claim. The Court finds that Plaintiffs have failed to understand the proper measure of damages. The Court is not awarding Defendant

Because the Court finds that the amount of Defendant's damages raises a question of fact, the Court has determined that a jury trial on this issue is required. Therefore, the Court will set this matter of damages for a jury trial. The Court finds that trial on this issue will not be necessary if the parties can stipulate to the amount of damages or submit to the Court a stipulated judgment or dismissal of Defendant's counterclaim. Such a stipulation or dismissal will not impair Plaintiffs' right to appeal the Court's granting Defendant's motion for summary judgment.

It is therefore ORDERED that Defendant's motion for summary judgment is granted.

It is FURTHER ORDERED that the issue of Defendant's damages as a result of Plaintiffs' breach is set for a jury trial on Tuesday, July 25, 1989, at 9:00 AM.

its attorneys' fees for prevailing on the dismissal of Plaintiffs' claims, rather the Court finds that Defendants damages for Plaintiffs' breach of contract is the amount of costs and attorneys' fees expended by Defendant in defending this lawsuit.