Laura K. GRILLET,
Plaintiff–Counter–Defendant–Appellee,

v.

SEARS, ROEBUCK & COMPANY,
Defendant–Counter–Claimant–Appellant.

No. 90–3580.

United States Court of Appeals,
Fifth Circuit.

March 26, 1991.

S. Mark Klyza, Cornelius R. Heusel, Kullman, Inman, Bee, Downing & Banta, New Orleans, La., for defendant-counter-claimant-appellant.

Gerald D. Wasserman, Bach & Wasserman, Metairie, La., for plaintiff-counter-defendant-appellee.

Before CLARK, Chief Judge, and RONEY[1] and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

At age sixty, Laura Grillet had spent twenty-six years as a personnel representative for Sears, Roebuck and Company. In 1988 Sears restructured various departments, thereby eliminating many positions. On March 4, 1988, Grillet's supervisor told Grillet that Sears intended to eliminate her position in three days. He also told her that all positions comparable to hers were being eliminated.

Grillet's supervisor explained that Grillet could either accept ten weeks' severance pay—about $9,000—or obtain fifty weeks' severance pay—about $45,000—by signing a release waiving any claims she might have against Sears. Thus, Sears offered Grillet $36,000 as consideration for waiving all claims against the company.

At the March 4 meeting, the supervisor presented Grillet with two different release forms. One release form indicated that the employee declined the opportunity to consult with an attorney; the other form indicated that the employee had obtained legal advice. Grillet said that she was familiar with both forms. In her position as personnel representative, Grillet had presented the same forms to other employees whose positions were being eliminated. Grillet signed the release form that declined an opportunity to obtain legal advice.

A week after Grillet executed the release, she learned that Sears had offered new job assignments to three younger employees in her department. Nevertheless, during the next several months she continued to accept payments of the fifty weeks' severance pay that she was entitled to under the release.

On November 20, 1989, well over a year after her termination, Grillet sued Sears under the Louisiana age discrimination law and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1988) (ADEA). She alleged that the release was ineffective because she had signed it under duress and in reliance on misrepresentation. Denying the existence of duress and misrepresentation, Sears counterclaimed for breach of contract, alleging that Grillet's suit constituted a breach of the release agreement.

Sears moved for summary judgment, claiming that the state-law claim was barred by the one-year statute of limitations and that the ADEA claim was barred by the release. Sears also alleged that even if a factual issue existed on the validity of the release, Grillet's retention of the $36,000 in consideration constituted a ratification of the release agreement. In opposing the summary judgment motion, Grillet attached a letter dated June 18, 1990 offering to tender back the money she received in consideration for the release if Sears reinstated her and gave her back pay.

The district court granted summary judgment for Sears on Grillet's state-law claim because this claim was untimely. It denied the remainder of the motion, however, explaining that the evidence could support a finding that Grillet did not knowingly and willfully consent to the release agreement. It also found that Grillet had not ratified the release because she had tendered the full amount of consideration plus interest.

Sears filed a motion for reconsideration, reurging its argument that the release was valid under the theory of ratification. Sears insisted that Grillet's tender-back offer was ineffective because it was conditioned on her reinstatement and receipt of back pay. The court again rejected this argument, noting that the evidence did not compel a finding that Grillet had ratified the release.

Sears appealed, arguing that this Court has jurisdiction under the collateral order doctrine. The district court stayed further

1. Circuit Judge of the Eleventh Circuit, sitting by designation.

219

proceedings pending a resolution of this appeal.

### Jurisdiction Under the Collateral Order Doctrine

■ The preliminary issue we must consider is whether an interlocutory order denying enforcement of a release agreement through the mechanism of summary judgment presents a need for immediate review urgent enough to overcome the general requirement that only final judgments are appealable. *See* 28 U.S.C. § 1291 (1988); *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 497–98, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989). Appellant argues that we should apply the collateral order doctrine, a judicially created exception to 28 U.S.C. § 1291, to take jurisdiction over this controversy. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798–99, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

The collateral order doctrine gives us jurisdiction only if the order being reviewed (1) conclusively determines the disputed question; (2) resolves an important issue separate from the merits of the action; and (3) would be effectively unreviewable on appeal from a final judgment. *Chasser*, 490 U.S. at 498, 109 S.Ct. at 1978; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *Newball v. Offshore Logistics Int'l*, 803 F.2d 821 (5th Cir.1986).

The Second Circuit has recently applied this doctrine in a similar context. *See Janneh v. GAF Corp.*, 887 F.2d 432 (2d Cir. 1989), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). In *Janneh*, the plaintiff filed an employment discrimination case but later agreed in writing to a settlement of the underlying claim for $3,000. After obtaining new counsel, he decided to pursue the claim in court. The district court denied the defendant's motion for an order enforcing the settlement agreement. The Second Circuit decided that it had jurisdiction after considering the three requirements set forth in *Coopers &*

*Lybrand. Id.* at 434–35 (citing *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458).

To meet the first requirement—that the district court's order conclusively determines the disputed question—the order must be made with the expectation that it will be "the final word on the subject addressed." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12–13 n. 14, 103 S.Ct. 927, 935–36 n. 14, 74 L.Ed.2d 765 (1983). This requirement is easily satisfied in this case; the judge issued the final word on whether Grillet had effectively released Sears from suit. From that point forward, Sears was simply going to be unable to avoid litigation. *See Janneh*, 887 F.2d at 435–36.

The second requirement—that the order resolve an important issue separate from the merits of the action—is also satisfied. The facts and issues involving ratification of the release are discrete from the underlying facts and issues of Grillet's age discrimination claim. *See Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. at 2458.

If Sears had urged us to apply the collateral order doctrine merely on the grounds that the release, when signed, was effective, then this second requirement would have made the jurisdictional issue closer. Grillet signed the release without legal advice on the same day that she learned of her imminent termination. The evidence indicates that she acted on the basis of a misrepresentation and under extreme time pressure. Our review of the judge's decision on the execution of the release, therefore, would involve "considerations that are 'enmeshed in the factual and legal issues comprising'" Grillet's employment discrimination claim. *Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. at 2458 (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)).

But Grillet accepted the benefits of the bargain long after she signed the release and long after she learned of her supervisor's alleged misrepresentation. The issue of ratification, therefore, is unrelated to the claim that Sears discriminated against Grillet on the basis of her age.

The third requirement—that the order be effectively unreviewable on appeal from a final judgment—is also satisfied. This case "involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Janneh*, 887 F.2d at 435 (quoting *Midland Asphalt Corp.*, 489 U.S. at 799, 109 S.Ct. at 1498). The essence of the claimed right is the right not to go to trial at all. *Id.* at 435. The release agreement between Sears and Grillet created "a right to avoid the uncertainties and irritations of a trial and appeal." *Id.*

### Ratification of the Release

Under the jurisdiction afforded by the collateral order doctrine, we consider the district court's order refusing to grant summary judgment on the basis of ratification. We review this issue *de novo*, using the same standards used by the district court. *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 548 (5th Cir.1989).

Summary judgment is appropriate only if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Pro. 56. The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

Sears argues that even if the release was tainted by misrepresentation and duress, Grillet ratified it as a matter of law by accepting the full benefits of the agreement after she learned of the misrepresentation. Although the Fifth Circuit has not addressed the issue of ratification of a release, a United States district court in Texas has recently considered the issue. *See Widener v. Arco Oil & Gas Co.*, 717 F.Supp. 1211 (N.D.Tex.1989).

In *Widener*, the court found employees' general releases of employment discrimination claims enforceable on summary judgment because the employees had ratified the releases by keeping the benefits. *See id.* at 1217. The court properly assumed that the releases were not voluntarily and knowingly signed. *See id.* The court concluded, nevertheless, that the defendant was entitled to summary judgment. *See id.*

A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract. *Id.* (citing *Rachesky v. Finklea*, 329 F.2d 606 (4th Cir.1964)). If a releasor, therefore, retains the consideration after learning that the release is voidable, her continued retention of the benefits constitutes a ratification of the release. *See Commonwealth Mortgage Corp. v. First Nationwide Bank*, 873 F.2d 859, 865–66 (5th Cir.1989); *Morta v. Korea Ins. Corp.*, 840 F.2d 1452 (9th Cir. 1988); *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417 (8th Cir.1985); *DiRose v. PK Management Corp.*, 691 F.2d 628 (2d Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983).

Grillet argues that the doctrine of ratification is inapplicable because she tendered back the full amount of consideration with accrued interest to Sears. Grillet did offer to pay back the money received for signing the release plus interest. But she conditioned this offer on the restoration of her former position with back pay from March 1988. Moreover, she did not make the tender-back offer until two years after she learned of the alleged misrepresentation.

This offer is simply too little, too late. A party seeking rescission must attempt to restore the *status quo ante*—that is, to return the parties to the positions they held just before they entered into the agreement. *United States v. Texarkana Trawlers*, 846 F.2d 297, 304 (5th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Just before Grillet signed the release, she was entitled to re-

ceive ten weeks' severance pay and to sue Sears for the alleged age discrimination. Sears was entitled to terminate Grillet's position, although the company was subject to a law suit for the alleged discrimination.

Grillet was not entitled to remain in her current position; she could secure that right only by suing Sears and proving that she had been wrongfully discharged. By offering to tender back the consideration only if Sears restored her position, Grillet has not made an adequate attempt to restore the *status quo ante*. *See Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 375 (Alaska 1989) (holding that a conditional offer does not satisfy the tender-back rule).

Even if Grillet's tender-back offer had been sufficient, it came too late. The law of contracts "requires a party claiming wrongful inducement to seek rescission shortly after discovering the misrepresentation." *Texarkana Trawlers*, 846 F.2d at 305 n. 20 (citing *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 752 F.2d 178 (5th Cir.1985)). To avoid ratifying the release through her conduct, Grillet should have returned the consideration soon after she learned that some younger employees in her department had not been terminated. *See Anselmo*, 771 F.2d at 420; *Komer v. Shipley*, 154 F.2d 861, 865–66 (5th Cir.1946). Instead, she kept the benefits of the release for two years after she discovered the alleged misrepresentation. It is simply too late for Grillet to avoid ratification.

*Conclusion*

Even if Grillet's release was tainted by misrepresentation, Grillet ratified the release by keeping its benefits for an unreasonably long period of time. Accordingly, we reverse and remand the case to the district court with instructions to enforce the release agreement by granting summary judgment in favor of Sears.

REVERSED and REMANDED.