Leonard C. CHAPUT, Plaintiff–Appellee,

v.

UNISYS CORPORATION,
Defendant–Appellant.

No. 223, Docket 91–7368.

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 1991.

Decided May 27, 1992.

Mark C. Stephenson, Rochester, N.Y. (Eugene D. Ulterino, Michael A. Hausknecht, David P. Ford, Nixon Hargrave, Devans & Doyle, Rochester, N.Y., of counsel), for defendant-appellant.

Lonny H. Dolin, Rochester, N.Y. (Daniel J. Moore, Harris, Beach & Wilcox, Rochester, N.Y., of counsel), for plaintiff-appellee.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Approximately one year after losing his job at Burroughs Corporation, Leonard C. Chaput brought an action against Burroughs[1] alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (1988) ("ADEA"). Burroughs raised as a defense a release from liability signed by Chaput. Burroughs thereafter moved for summary judgment, arguing, *inter alia,* that, whether or not the release had been signed knowingly and voluntarily, Chaput had ratified the release by accepting and retaining valuable consideration. This motion was denied. Burroughs then moved for reconsideration. Judge Telesca denied this motion as well. Burroughs now appeals from the

---

**1.** Chaput's original complaint was brought against Burroughs. However, pursuant to an order of the district court entered January 14, 1987, Unisys Corporation, as successor to Burroughs, was substituted as the defendant. Because Chaput was at all times employed by Burroughs, we will refer to the defendant-appellant as Burroughs.

denial of reconsideration. We lack jurisdiction and dismiss the appeal.

## BACKGROUND

Viewing the record in the light most favorable to Chaput, the party opposing the motion for summary judgment, the facts are as follows. Chaput was hired by Burroughs in 1957. He received a number of promotions over the years, and by September 1983 was the Controller of Burroughs' Office Supply Division. In February 1985, Chaput was relieved of his duties as Controller and transferred to the Business Forms Division of Burroughs.

On July 3, 1985, the Director of Human Resources of the Business Forms Division, John Scarpelli, told Chaput that he was being laid off because there were no jobs available for him in that division. At this meeting, Scarpelli presented Chaput with a letter containing proposed terms of separation from Burroughs. The letter stated that Chaput would receive the following benefits: (i) he would remain on Burroughs' active payroll until October 11, 1985; (ii) beginning October 11, he would receive twenty-eight weeks of extended lay-off benefits; (iii) if, before the termination of these lay-off benefits, he found other employment, Burroughs would pay the remaining benefits in one lump sum; (iv) Burroughs would not challenge his unemployment compensation claim; and (v) Burroughs would provide him with professional outplacement assistance.

In addition, the letter contained the following language:

> If this letter reflects our understandings and you agree to accept the provisions set forth above, you do release and forever discharge the Burroughs Corporation ... from all claims and from all liabilities of any kind or nature whatsoever ...
>
> You further declare ... that this is a full, complete, and final release.

At a later meeting with Scarpelli, Chaput told Scarpelli that there were omissions in the letter. In particular, the letter did not state whether Chaput was entitled to accumulated vacation time or to his stock options. Scarpelli added handwritten notes to the letter to satisfy Chaput's concerns. Chaput hesitated and, he contends, signed the letter only after Scarpelli assured him that it "didn't mean anything" and that "everybody signed it." Finally, Chaput testified that he did not know what his entitlements were.

Chaput performed no services for Burroughs after July 23, 1985. However, pursuant to the terms of the letter, he remained on Burroughs' active payroll until October 11, 1985. At that time, he began to receive his accumulated vacation time and extended lay-off benefits, as the letter also provided. Additionally, Chaput received outplacement assistance and uncontested unemployment insurance benefits.

On October 30, 1985, Chaput filed a complaint with the Equal Employment Opportunity Commission ("EEOC") accusing Burroughs of age discrimination. On November 5, Burroughs offered to extend Chaput's status as an active employee if he signed another release that explicitly stated that the extension and release were a *quid pro quo*. Chaput declined and, in August 1986, commenced the instant action.

In March 1990, after discovery, Burroughs moved for summary judgment. It argued that all the evidence indicated that the letter had been signed knowingly and voluntarily. Burroughs further argued that, whether or not the letter had been signed knowingly and voluntarily, Chaput's failure to tender the consideration he had received for signing the letter constituted a ratification of the release. Chaput cross-moved to strike this affirmative defense. The district court denied both motions. Burroughs moved for reconsideration. Judge Telesca denied this motion as well, because "significant issues of material fact still remain as to whether plaintiff received valid consideration for his purported release, and, if so, whether his retention of those benefits amounted to a ratification." It is from this order that Burroughs now appeals.

## DISCUSSION

A denial of a motion for summary judgment is generally not a final decision and is appealable only under the so-called collateral order doctrine. *See Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1224–26, 93 L.Ed. 1528 (1949). The collateral order doctrine permits appeals from non-final orders when three conditions are satisfied. The order must: (i) "conclusively determine the disputed question"; (ii) "resolve an important issue completely separate from the merits of the action"; and (iii) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978).

Burroughs relies on *Janneh v. GAF Corporation*, 887 F.2d 432 (2d Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990), and *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217 (5th Cir.1991), in arguing that the collateral order doctrine applies in the instant matter.

In *Janneh*, the plaintiff had brought suit against his employer, GAF Corporation, alleging discrimination in violation of Title VII. Over four years later, on the advice of counsel, Janneh agreed to settle the case. At a subsequent status conference, Janneh repudiated the settlement, arguing that he had been coerced into signing it by his now-former attorney. GAF's subsequent motion to enforce the agreement was denied, because the district judge believed that a settlement had never been reached. 887 F.2d at 434. Relying on the collateral order doctrine, we held that we had appellate jurisdiction because the district court's order deprived GAF of its "bargained-for right to avoid trial by enforcing the settlement agreement." *Id.* at 435.

In *Grillet*, the Fifth Circuit asserted jurisdiction over an appeal virtually identical to the instant matter. Grillet had been discharged from her job at Sears. At the time of her termination, she executed a release form, waiving any claims against Sears. Approximately one year later, Grillet sued Sears, alleging violations of the ADEA. Sears, relying on the release and arguing that Grillet's acceptance of consideration had ratified the release, moved for summary judgment, which was denied. Sears appealed, and the Fifth Circuit asserted appellate jurisdiction under the collateral order doctrine. 927 F.2d at 218–20.

Under *Janneh* and *Grillet*, we may have jurisdiction on the ground that a release from liability protects the released party from the distractions and expenses of a trial as well as from further monetary liability. This theory is analogous to that applied to claims of double jeopardy or qualified immunity. *See Caribbean Trading v. Nigerian Nat. Petroleum*, 948 F.2d 111, 114 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). In those cases, the claim asserted is not only a defense to liability but also an immunity from trial. Interlocutory appeals are allowed because a denial of such a claim disposes of the asserted immunity from trial, is separate from the merits, and is effectively unreviewable at a later stage. *E.g., Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985) (qualified immunity). *Janneh* and *Grillet* differ in that the former involved a settlement of ongoing litigation whereas the latter involved a general release by a terminated employee. However, these are not distinguishing features because in each case it can be said that the employer was bargaining to avoid the distractions and costs of trial as well as further liability from damages.

However, Burroughs concedes that interlocutory appeals are not authorized where disputed factual issues pertinent to the validity of a release exist. *Cf. Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991) (question of qualified immunity not immediately appealable when factual issues remain in dispute).

A release is not effective unless the party giving the release receives something of value to which the party was not otherwise entitled. *See Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 196, 443 N.E.2d 441, 444 (1982). Chaput argues that he did not receive valid consideration

for signing the release and that, without consideration, there is no contract that could have been ratified. Indeed, if there was no consideration, such consideration could be neither returned nor retained. Burroughs, on the other hand, contends that because Chaput accepted consideration and failed to tender it, he has ratified the release.

Burroughs states that Chaput was entitled to the benefits listed in the letter except for the provision of out-placement assistance and twelve extra weeks on the payroll as an employee from July 23 to October 11, 1985. To establish that these latter benefits were not entitlements, Burroughs relies upon the testimony of two of its employees, Scarpelli and Paul Titzler and upon the Burroughs Personnel Policies & Practices Manual ("Manual").

Although the matter is close, the evidence in the record is sufficient to allow a trier of fact to find that Chaput did not receive valid consideration. Titzler's testimony as to whether all the enumerated benefits were entitlements was inconsistent in that he at one point stated that all of the benefits in the letter containing the release were "standard." Chaput testified at his deposition that no one identified for him benefits to which he was entitled whether or not he signed a release or benefits that were available only if he signed the release. In fact, Scarpelli's initial proposal failed to include benefits to which he was entitled. Chaput stated that he was also told by Scarpelli that everybody signed a similar form, that signing it was just a formality, and that the release meant nothing. If Chaput's testimony were credited by a trier, Scarpelli's statement might well be interpreted to mean that no *quid pro quo* was involved.

With regard to the outplacement assistance, this termination benefit is not mentioned in the Manual. However, Harold McCune, a Burroughs' employee, testified that he knew of other terminated employees who had received such assistance. Even Scarpelli admitted that he was aware of some employees who had received such assistance.

With regard to whether keeping Chaput on as an active employee between July 23 and October 11—during which Chaput did not work but was paid—was valid consideration, Burroughs sought to avoid a layoff and continued to search for a position within the company for him after the release was signed. It is thus not at all clear that the selection of October 11 as the departure date was not simply a layoff date chosen to allow Burroughs time to search for another position in the company for Chaput. Had such a position been found, the twenty-eight weeks of extended benefits would not have had to have been paid. On this point the Manual is unhelpful because it contains no criteria for establishing the termination date for particular employees.

Finally, Burroughs sought another release in November 1985 in exchange for a three-month extension of active employment, a benefit that was unquestionably valid consideration. A trier might infer from this offer that Burroughs believed that the previous release was not valid. We conclude that a trier could find that there was not valid consideration for the release signed by Chaput.

One difficulty with Burroughs' position is that on this record a trier could find that the Manual was not the exclusive source of standard termination benefits. There is evidence of other benefits available, or arguably so, on an informal basis, such as outplacement assistance. In addition, the letter containing the release requires a lump sum payment of unpaid extended lay-off benefits if Chaput were to find other employment. Burroughs does not claim that this is a non-standard entitlement, yet the Manual contains no provision for such lump sum payments.

Because there is a dispute of material fact concerning the validity of the release, we conclude that Judge Telesca's denial of summary judgment is not an appealable decision under the collateral order doctrine. We dismiss the appeal for lack of appellate jurisdiction. In view of our disposition of this appeal, we do not address issues concerning whether the release was signed

knowingly or whether it was ratified by Chaput's conduct.