Tom BLAKENEY, et al.,

v.

LOMAS INFORMATION
SYSTEMS, INC.

Civ. A. No. 3:94–CV–1525–G.

United States District Court,
N.D. Texas,
Dallas Division.

March 14, 1995.

Durwood D. Crawford, Goins Underkofler Crawford & Langdon, Dallas, TX, for plaintiffs.

Franklin Eastwood Wright, Winstead Sechrest & Minick, Dallas, TX, for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of defendant Lomas Information Systems, Inc. ("Lomas") for dismissal of the claims of plaintiffs Tom Blakeney, Michael Blohm, Robert S. Huffer, Erin Phelps, James Ruska, Linn Madsen[1], Kathy Howell, and Mike Sweet (collectively, "the plaintiffs") under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56(c). For the reasons stated below, Lomas's motion for summary judgment is granted.

## I. BACKGROUND

This case involves the plaintiffs' claims that Lomas unlawfully discriminated against them on the basis of age. Lomas initiated its 1993 Reduction in Force Program ("the Program") on January 1, 1993, as a result of which the plaintiffs were terminated. Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and Brief in Support Thereof ("Defendant's Motion"), Exhibit 1. On May 3, 1993, Lomas discharged the plaintiffs and provided them with a document entitled "General Release." This release included a broad waiver of all claims against Lomas. The release provided that payment to the plaintiffs under the Program constituted consideration for the release.[2] Each of the plaintiffs signed a General Release and, in return, Lomas paid each plaintiff severance benefits in accordance with the Program.[3]

1. Linn Madsen is referred to as both "Linn Madsen" and "Barbara Cowick" in her employment records with Lomas. Defendant's Unopposed Motion to Clarify the Summary Judgment Record, Exhibit A.

2. The notice included, in relevant part, the following provisions:

As a material inducement to Lomas ... to enter into this General Release, [this employee] ... hereby irrevocably and unconditionally releases, acquits and forever discharges the Company ... from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, losses, debts and expenses ... of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, rights under federal, state or local laws prohibiting discrimination, claims growing out of any legal restrictions on the Company's right to terminate its employees ... which ... [this employee] now has, owns or holds, or claims to have owned or held, or which ... at any time heretofore had owned or held, or which [this employee] at any time hereinafter may have owned or held or claimed to have owned or held against each of any of the Releases.

As consideration for this General Release, the Company ... agrees to pay [this employee] the sum of [payment amount] (less deductions) as severance pay.... The employee enters into this General Release with full knowledge of its contents and enters into this agreement voluntarily.

See, e.g., Defendant's Motion, Exhibit 2.

3.

| Plaintiff | Severance Pay |
|---|---|
| Tom Blakeney | $ 8,820.51 |
| Michael Blohm | $21,783.01 |
| Robert Huffer | $12,990.00 |
| Erin Phelps | $ 8,750.00 |
| James Ruska | $ 7,166.66 |
| Barbara Cowick | $ 4,176.66 |
| Kathleen Howell | $16,398.62 |
| Michael Sweet | $ 8,371.66 |

Defendant's Motion, Exhibits 2–9.

After signing the General Release, each plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which it was claimed that his or her termination resulted from unlawful age discrimination. On July 18, 1994, the plaintiffs filed this suit in which they claim that they were victims of age discrimination (1) when Lomas terminated them, and (2) when Lomas failed to rehire them. Plaintiffs' Original Complaint ("Complaint") at 3–4. Plaintiffs further allege that the releases they signed are void because of Lomas's failure to comply with the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f).

## II. *ANALYSIS*

### A. *Evidentiary Burdens on Motion for Summary Judgment*

■ Lomas has styled its motion as both a motion to dismiss and a motion for summary judgment. Because the court has considered matters outside the pleadings, the motion will be construed as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

Summary judgment is proper when the pleadings and evidence on file demonstrate that "no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A movant for summary judgment must inform the court of the basis of its motion and identify the portions of the record which reveal there are no genuine material fact issues to support the nonmovant's case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains."

*Grillet v. Sears, Roebuck & Company,* 927 F.2d 217, 220 (5th Cir.1991) (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53); *see also* Fed.R.Civ.P. 56(c).

Once the movant makes this showing, the nonmovant must direct the court's attention to evidence in the record demonstrating the existence of a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. The nonmovant must present evidence sufficient to support a resolution of the factual issue in his or her favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. All of the evidence, however, must be viewed in a light most favorable to the motion's opponent. *Id.* at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Parties may not use conclusory allegations as evidence to support or defeat a motion for summary judgment. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Summary judgment is properly entered against a party if after adequate time for discovery, the party fails to establish the existence of an element essential to his or her case and as to which he or she will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; Fed. R.Civ.P. 56(e).

### B. *The OWBPA*

The basis of the summary judgment motion is that the plaintiffs have waived their right to bring suit as a result of the General Release they signed and the severance benefits they received. The effect of the releases signed by the plaintiffs requires an analysis of the Fifth Circuit law interpreting the OWBPA.

■ The Age Discrimination in Employment Act of 1967 ("ADEA") entitles a party to bring a civil action against an employer for age discrimination. 29 U.S.C. § 626(c)(1). The OWBPA amended the ADEA in 1990. Congress enacted the OWBPA to enable an employer to enforce an ADEA waiver, unsu-

pervised by the EEOC, if the waiver is "knowing and voluntary" when executed. S.Rep. No. 263, 101st Cong., 2d Sess. 31 (1990). To accomplish this goal, Congress enacted stringent statutory requirements that must be satisfied for an ADEA waiver to be considered knowing and voluntary. *Id.* at 33–34.

### 1. *Statutory Requirements for a Knowing and Voluntary Waiver*

■ The OWBPA applies to group termination programs such as the Program in this case. *Id.* at § 626(f)(1)(H). Under the OWBPA, an individual may not waive a right or claim arising under the ADEA unless the waiver is knowing and voluntary. 29 U.S.C. § 626(f)(1). The OWBPA lists specific requirements that must be met before a waiver or a release of an ADEA claim or right can be considered knowing and voluntary. *See* 29 U.S.C. §§ 626(f)(1)(A)–(H) (listing requirements); *Williams v. Phillips Petroleum Company,* 23 F.3d 930, 936 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 582, 130 L.Ed.2d 497 (1994).

Plaintiffs argue that the specific requirements of the OWBPA were not met in this case, so that the General Release is void. Specifically, plaintiffs allege, (1) the General Release did not directly mention the ADEA, (2) plaintiffs were not given sufficient time to consider the General Release, (3) they were not given an option to revoke the General Release, and (4) they were not advised to consult with an attorney, all in violation of the OWBPA. Complaint at 5. Lomas does not dispute that the General Release was not in compliance with the OWBPA. Defendant's Motion at 2.[4] In fact, the waiver used by Lomas was clearly deficient on several grounds, including its failure to refer specifically to age discrimination claims and its failure to advise in writing to consult an attorney. 29 U.S.C. § 626(f)(1)(B), (E).

■ Although the plaintiffs are correct that the General Releases did not meet OWBPA requirements, this deficiency does not render them void. Indeed, the Fifth Circuit has explicitly held that "defective waiver agreements [i.e., waiver agreements not in compliance with the OWBPA] are voidable and not void." *Wamsley v. Champlin Refining and Chemicals, Inc.,* 11 F.3d 534, 539 (5th Cir.1993). Thus, although the General Releases here are insufficient to satisfy the requirements of the OWBPA, this merely makes them voidable. Waivers that are not knowing and voluntary are "subject to being avoided at the election of the employee." *Id.*

### 2. *Ratification of Waivers by Retention of Benefits*

Even though the waivers here were presumptively not knowing and voluntary, they—together with any accompanying releases—are nevertheless enforceable if ratified by the employee. *Wittorf v. Shell Oil Company,* 37 F.3d 1151, 1154 (5th Cir.1994). "[N]either the language nor the purpose of the OWBPA indicates a congressional desire to deprive an employee of the ability to ratify a waiver that fails to meet the requirements of the OWBPA." *Wamsley,* 11 F.3d at 539–40. "[If] employers [were] forced to assume the risk that noncompliance with all of [the] statutory requirements of [the OWBPA] render[ed] a waiver agreement for which they have paid valuable consideration void and thus, not capable of being ratified, clearly they would be disinclined to propose such solutions." *Id.* at 539.

■ A waiver can be ratified by the employee's failure to tender back to the employer severance benefits received in exchange for execution of a waiver. *Grillet,* 927 F.2d at 220. Ratification of a waiver, even if the waiver does not comply with the OWBPA, precludes a subsequent age discrimination suit against the employer. *Id.* "A person who signs a release, then sues his or her employer for matters covered under the release, is obligated to return the consid-

---

4. Former Lomas employee William E. Beran stated that a Lomas human resources manager knew that the General Release did not comply with the OWBPA. Plaintiffs' Opposition to Defendant's Motion to Dismiss and for Summary Judgment, Affidavit of William E. Beran, Exhibit A at 2. Whether Lomas had knowledge of the OWBPA and its requirements is immaterial, however, to the analysis of this motion.

eration" upon learning of the invalidity of the release. *Williams,* 23 F.3d at 937. "When [employees] [choose] to retain and not tender back to [the employer] the benefits paid them in consideration for their promise not to sue [the employer], they manifest[ ] their intention to be bound by the waivers and thus, [make] a new promise to abide by their terms." *Wamsley,* 11 F.3d at 540 (citing *Grillet,* 927 F.2d at 220; *O'Shea v. Commercial Credit Corporation,* 930 F.2d 358, 362 (4th Cir.1991); *In re Boston Shipyard Corp.,* 886 F.2d 451, 455 (1st Cir.1989); *Anselmo v. Manufacturers Life Insurance Company,* 771 F.2d 417, 420 (8th Cir.1985)).

▮ Lomas argues that even if the General Releases were unenforceable at the time of their execution, the plaintiffs subsequently ratified their severance agreements by failing to return their severance pay after learning the General Releases were invalid. Defendant's Motion at 4.[5] The court is persuaded by this argument.

▮ Although the plaintiffs offered to tender back all or part of their severance payments to revive their ADEA claims, such as belated tender is "simply too little, too late." *Grillet,* 927 F.2d at 220. A tender is inadequate if it is untimely. *Id.* at 221. The plaintiffs still have not returned the payments more than six months after they filed suit. Tendering a severance payment back to the employer only upon the court's endorsement of the plaintiffs' ADEA claims[6] is not a timely revocation of the waiver.[7] Furthermore, for effective rescission, the plaintiffs are obligated "to return the parties to the positions they held just before they en-

tered into the agreement." *Grillet,* 927 F.2d at 220 (citing *Texarkana Trawlers,* 846 F.2d at 304). The plaintiffs offered to return only that portion of their payments which pertained to their ADEA claims; clearly, therefore, they have not offered to restore the parties to their respective positions before the General Releases were executed.

The plaintiffs argue that the instant case is analogous to the Seventh Circuit decision in *Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994) (holding that severance agreements that did not meet OWBPA requirements were not ratified by employees refusing to tender back consideration). At least two district courts have followed *Oberg* in holding that employees cannot ratify a waiver when the waiver does not meet the requirements of the OWBPA. *See, e.g., Soliman v. Digital Equipment Corporation,* 869 F.Supp. 65, 68–69 (D.Mass. 1994); *Blistein v. St. John's College,* 860 F.Supp. 256, 262 (D.Md.1994). The Fifth Circuit, however, has directly rejected the holding in *Oberg. Wamsley,* 11 F.3d at 540 n. 11 ("[t]he court's conclusion in *Oberg* is at odds with the legislative history and congressional intent behind the OWBPA"); *see also Wittorf,* 37 F.3d at 1154 ("Even assuming that the Release and Settlement Agreement was defective ..., the Agreement became voidable and not void."). This court concludes, consequently, that *Oberg* is not the law in this circuit.

### III. CONCLUSION

The plaintiffs waived their claims against Lomas by ratifying the General Releases.

---

**5.** Apparently, none of the plaintiffs has returned his or her severance pay to Lomas. Defendant's Motion, Affidavit of Tamara Wright, Exhibit A at 2. Upon filing their complaint, however, the plaintiffs (who do not dispute that they have not returned the severance payments) offered to refund the portions of their severance pay that are attributable to the release of ADEA claims. Complaint at 5.

**6.** "Plaintiffs seek declaratory judgment of the Court determining what portions of the consideration, if any, was paid by [Lomas] for the release of such ADEA claims and what amounts, if any, are due to be refunded to [Lomas] in order for Plaintiffs to pursue their ADEA claims." Complaint ¶ X.

**7.** For the plaintiffs to have revoked the waivers, they would have had to seek rescission "shortly after discovering the misrepresentation." *United States v. Texarkana Trawlers,* 846 F.2d 297, 305 n. 20 (5th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Although it is unclear exactly how long the plaintiffs could have waited, it is clear that they have waited far too long in this instance. At the very least, the plaintiffs would have to had to return their severance benefits shortly after consulting an attorney about the possibility of bringing a claim for age discrimination.

Accordingly, Lomas's motion for summary judgment is **GRANTED**.

**SO ORDERED.**